*Southern Division*

# No. 142

# DAVID M. SCHNEIDERMAN
## v.
# COMMONWEALTH OF MASSACHUSETTS

Argued: June 18, 1976. Certified: January 7, 1977.

Case tried to *Kramer, J.,* in the District Court of East Norfolk. No. 25.

Present: Lee, P.J.; Rider, and Welsh, J.J.

Plaintiff, *Pro Se.*

**Walsh, J.** This is a petition for compensation brought by a victim of a violent crime under the provisions of G.L.c. 258A.

The office of the Attorney General filed an answer in which it neither admitted nor denied the claim.*

The trial justice found for the petitioner in the sum of $110.42.

Section 2 of Chapter 258A gives jurisdiction of such petitions to the District Courts. The Appellate Divisions are empowered to review such petitions. *Kurker v. Commonwealth of Massachusetts,* 52 Mass. App. Dec. 34, 35 (1973).

The case was submitted to the trial court for decision on the basis of agreed facts, found as follows:

On September 29, 1971, the plaintiff received personal injuries as a result of a violent crime, to wit, assault and battery. The matter was promptly reported to the proper authorities. Plaintiff was, at the time of the crime, a student in his senior year at Clark University in Worcester. Previous to the assault and battery he had received notification of his acceptance to law school for the academic year commencing September of 1972 on the condition that he complete all of the requirements for a Bachelor of Arts Degree prior thereto. The trial court found that this condition would have been satisfied by May 1972 but for academic absences directly attributable to injuries sustained by the plaintiff in the assault and battery.

---

* Reporter's Note: Such an answer in effect is admission of the opponent's allegations.

For four years prior to the injuries inflicted upon him, plaintiff was regularly employed by Zayres full time in the summer and part time during the academic portion of the year. The trial justice found as a fact that the plaintiff would have been employed by Zayres during the summer of 1972, but was unable to work because he attended summer school in order to complete the requirements for his Bachelor of Arts degree. The amount of earnings lost by reason of his attendance at summer school rather than working as he had intended amounted to $900.00. The justice found that the tuition expenses for summer school totaled $542.95.

The court awarded the plaintiff the sum of $110.42 which represents the amount of expenses reasonably incurred for medical treatment and medicine not reimbursable through insurance proceeds, less the statutory deductible of $100.00 specified in G.L.c. 258A, §5.

The issues raised by the plaintiff's requests for rulings may be summarized as follows:

1. Is the plaintiff entitled to receive, in addition to his unreimbursed medical expenses, compensation for the tuition expenses he incurred for summer school where attendance at summer school was necessitated by failure to complete academic requirements for a Bachelor's Degree due to absences caused by the injuries?

2. May the plaintiff receive compensation under Chapter 258A for earnings lost due to his attendance at summer school when such attendance became necessary to qualify him for law school due to absences caused by injuries sustained as a victim of a violent crime?

The answer to both questions is in the negative. Specifically, the plaintiff's decision to attend summer school in order to satisfy the requirements for a Bachelor's degree and to forego his usual employment

were voluntary choices on his part, and were not causally related to the injuries sustained as a victim of violent crime.

Section 5 of Chapter 258A provides in part as follows:

> "No compensation shall be paid unless the claimant has incurred an out-of-pocket loss of at least one hundred dollars or has lost two continuous weeks of earnings or support. *Out-of-pocket loss shall mean unreimbursed or unreimbursable expenses or indebtedness reasonably incurred for medical care or other services necessary as a result of the injury upon which such claim is based."*

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

> "Any compensation paid under this chapter shall be in an amount not exceeding out-of-pocket loss, together with *loss of earnings or support resulting from such injury."* (Emphasis supplied).

The "loss of earnings" for which plaintiff seeks compensation herein is not a direct and immediate consequence of the injuries he sustained. The inability to work at his usual summer occupation is the result of his decision to attend summer school to complete the requirements of his degree so as to be eligible to attend law school. We grant that the decision to attend summer school was occasioned by his inability to complete degree requirements in the academic year. The loss of earnings for which compensation is sought here is too remote and speculative. The injuries sustained by the plaintiff as a victim of a violent crim did not disable him from working during the summer of 1972. He chose not to work so that he could attend summer school.

Expenses for tuition incurred by plaintiff to attend summer school are not "expenses or indebtedness reasonably incurred for medical care or other services necessary as a result of the injury upon which such

claim is based". We believe that the legislature intended that the other services for which compensation could be awarded under this statute are limited to such services that are reasonably calculated to restore the plaintiff to health so that he is able to return to work. Without attempting to enumerate every kind of service for which reimbursement might be awarded, examples of such services might be nursing care, rehabilitation therapy, prosthetic apparatus, when required, out-patient after care, and vocational re-education in cases where the victim's injuries are such as would preclude him from following his previous customary occupation.

It might be argued that this is a remedial statute and ought to be construed broadly to effects its objects as envisioned by the legislature. Generally this is the case with such statutes. However, this type of remedial statute is distinguishable from other sorts of statutes creating new remedies in that here, the Commonwealth, as *parens patriae,* seeks to afford compensation to persons injured by criminal acts of violence of others for which no legal responsibility on the part of the Commonwealth exists independently of this statute. It differs in this aspect from legislation such as Workmen's Compensation Acts. Such statutes as these undertake to transfer the risk of loss of wage earning ability in cases within their purview to individuals, natural or corporate, who stand to profit from employing others at labor. The Commonwealth here clearly does not stand to gain anything from the perpetration of violent crimes. It is evident that even apart from this statute the Commonwealth suffers economic loss as well as the victim and his family.

In the case of *Gurley v. Commonwealth,* 363 Mass. 595 (1973), the court in commenting upon this statute stated, at P. 600:

> "In waiving its immunity, the Commonwealth established certain rights of recovery which cannot be extended beyond those expressly confer-

red by the statute. See *Putnam Furniture Bldg., Inc. v. Commonwealth,* 323 Mass. 179, 185; *Smith v. Commonwealth,* 347 Mass. 453, 456."

The losses and expenses for which the plaintiff seeks reimbursement are not the sort which are compensable under this statute. There is no error perceived in the trial judge's action upon the plaintiff's requests for rulings.

**The report is dismissed.**