PENNY SERRELL *vs*. FRANKLIN COUNTY & another.[1]

No. 97-P-1504.

Franklin. February 5, 1999. - July 26, 1999.

Present: LENK, GILLERMAN, & RAPOZA, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Negligence,* Correctional facility. *County,* Correctional facilities, Liability for tort. *Practice, Civil,* Summary judgment.

Claims of negligence brought against a county and its sheriff, by a person injured in the visitor's room in a house of correction when officers subdued an inmate who had started a fight, were barred by the provisions of G. L. c. 258, § 10(*b*) (discretionary function immunity), or § 10(*j*) (immunity for failure to prevent or diminish harm), with the exception of the claim that correctional officers failed to act with due care in intervening to subdue the inmate, in circumstances in which the officers were implementing and executing an established county policy regarding security, and where the officers, and not the inmate, directly harmed the plaintiff. [401-405]

CIVIL ACTION commenced in the Superior Court Department on June 2, 1995.

The case was heard by *Constance M. Sweeney*, J., on a motion for summary judgment.

*Robert ·W. Crowley* for the plaintiff.

*John J. Davis* for the defendants.

LENK, J. On May 22, 1993, the plaintiff, Penny Serrell, was visiting an inmate at the Franklin County house of correction. During her visit, a different inmate, Clyde Brown, was visiting with his girlfriend, he sitting on one side of the screen separating inmates and prisoners, she on the other. Heated words and a quarrel between Brown and his girlfriend ensued; despite the presence of correctional officers, Brown ranged approximately

---

[1]The sheriff of Franklin County. Claims against the sheriff as a public employee were dismissed, and the plaintiff makes no argument against the sheriff on appeal.

thirty feet from where he had been sitting, crossed over to the visitors' side of the screen, and accosted his girlfriend. The correctional officers attempted to subdue Brown and, during the struggle, the officers caused an iron gate in the visitors' area to be pinned up against Serrell, who suffered serious injury.

Serrell brought suit under the Tort Claims Act, G. L. c. 258, against Franklin County and its sheriff. She alleged that the county negligently failed to provide a safe area in which to visit an inmate, that the sheriff negligently failed properly to train, instruct, and supervise the correctional officers, and that the correctional officers negligently failed to monitor inmates in the visiting area in a reasonable manner and, when they ultimately intervened, were negligent in their attempts to restrain Brown on the visitors' side of the area. A Superior Court judge allowed the defendants'[2] motion for summary judgment, ruling that the plaintiff's claims were barred either by G. L. c. 258, § 10(*b*) (discretionary function immunity), or by § 10(*j*) (immunity for failures to prevent or diminish harm).

On appeal, Serrell claims error in two respects. First, she argues that it was error to allow the county's motion for summary judgment where genuine issues of material fact exist which might preclude the application of § 10(*b*) and § 10(*j*) to her claim. Second, she contends that the judge abused her discretion in denying Serrell's request, pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), to continue action on the defendants' prematurely filed summary judgment motion until Serrell could undertake additional discovery.

*Discussion.* The plaintiff propounded several theories for the county's negligence: the failure to provide a safe area in which to visit an inmate; the failure properly to train, instruct and supervise correctional officers; the correctional officers' failure to monitor the inmates in the visiting area and thereby control and ameliorate an increasingly volatile situation; and the correctional officers' failure to act with due care when intervening to subdue Brown.

As to all but the last theory of negligence, viz., negligent intervention, we think entirely correct the Superior Court judge's analysis and conclusion that they succumb to the bar of both

---

[2]The Superior Court judge correctly determined that the county, as the public employer under G. L. c. 258, § 2, would be liable for any negligent acts committed by the sheriff within the scope of his employment.

§ 10(*b*) discretionary function immunity and/or § 10(*j*) immunity for failures to prevent or diminish harm. The last theory of negligence, however, merits further scrutiny.

The actions of the correctional officers in intervening to subdue an inmate who had crossed over into the visitors' area in order to attack his girlfriend do not appear to be discretionary functions immunized from tort liability by G. L. c. 258, § 10(*b*), as inserted by St. 1978, c. 512, § 15. That section renders inapplicable otherwise pertinent provisions of the Tort Claims Act for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused[.]" The two-part test for determining whether a plaintiff's claim is foreclosed by § 10(*b*) was articulated as follows in *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992). First, it must be determined whether the governmental actors, here the correctional officers, had any discretion to do or not do what Serrell claims caused her harm. "[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case." *Ibid.* If this part of the test is met (i.e., the governmental actor did have some amount of discretion), we go on to the second part to determine whether the discretion that the governmental actor had is of the kind for which § 10(*b*) provides immunity. The dividing line is between, on the one hand, those functions resting on the exercise of judgment and discretion geared toward planning and policymaking, for which there would be governmental immunity, and, on the other, those functions involving the implementation and execution of previously established governmental policy and planning, for which there would be no governmental immunity. *Id.* at 142.

The record discloses that, at the time the correctional officers intervened to subdue the inmate Brown, there was in place a county plan or policy regarding visiting at the Franklin County house of correction. Under this plan or policy, the officers were required to maintain security and control in the visiting area. Indeed, in answering interrogatories, the county acknowledged that "the correctional officers involved in subduing Clyde Brown were following established policy, rule or practice." In

view of this, neither part of the *Stoller* test is met. The correctional officers' course of conduct was prescribed by the county's pre-existing plan or policy and, even if the correctional officers' actions involved some exercise of discretion, it was in the implementation and execution, not the making, of policy. There is no § 10(*b*) immunity.

The more difficult question is whether G. L. c. 258, § 10(*j*), immunizes from liability the actions of the correctional officers in subduing the inmate Brown. The Superior Court judge concluded that it did, stating that "the [c]ounty cannot be held liable for any failure on the part of the correctional officers present in the visiting area at the House of Corrections to prevent the violent outburst by the inmate against his visitor; nor can the county be held liable for injuries which the plaintiff sustained while the officers were acting to subdue Mr. Brown and thereby diminish the harmful consequences of his violent outburst."

Section 10(*j*), as inserted by St. 1993, c. 495, § 57, bars "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." The "interpretive quagmire" presented by § 10(*j*) has been eased of late by the Supreme Judicial Court's decision in *Brum* v. *Dartmouth*, 428 Mass. 684, 692 (1999). "[T]he principal purpose of § 10 (*j*) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party." *Id.* at 696. To the extent that Serrell seeks to hold the county liable for the correctional officers' failure to prevent the violent outburst of inmate Brown against his girlfriend, *Brum* makes it clear that she may not do so, as the judge correctly ruled. However, Serrell seeks to hold the county liable not only for what the correctional officers failed to do, but what they did do, viz., subduing Brown in the visitors' area in a way that injured the bystanding Serrell. It is not evident that § 10(*j*) bars such a claim.

We observe in this regard that the cases to date construing § 10(*j*) and holding it a bar to tort liability involve fact patterns where a third party, not the governmental actor, directly harmed the plaintiff. In *Bonnie W.* v. *Commonwealth*, 419 Mass. 122 (1994), the plaintiff was sexually assaulted by a probationer

employed as a maintenance worker in the trailer park where she lived. She sued, alleging that the probationer's parole officer had failed to supervise the probationer properly and had negligently recommended the probationer for the maintenance job. The claim of failure to supervise was barred by § 10(*j*), *id.* at 126; not so the claim regarding the parole officer's negligent recommendation. The latter was "an affirmative act on the part of the officer that created a situation in which a sexual predator held a job giving him access to the keys to every trailer in the park." *Brum, supra* at 695.

In *Pallazola* v. *Foxborough*, 418 Mass. 639 (1994), the plaintiff was injured on a public way after attending a New England Patriots football game. Fans had removed a portion of the aluminum goalpost from the stadium and were carrying it when it came in contact with a high-voltage overhead electric power line. The plaintiff was injured when he tried to prevent the electrified goalpost from falling on him. He sued the town, claiming that it had failed to provide sufficient police protection and to prevent the unlawful removal of the goalpost from the stadium. These claims were barred by § 10(*j*).

In *Lawrence* v. *Cambridge*, 422 Mass. 406 (1996), the plaintiff agreed to testify before a grand jury after having been robbed outside the store where he worked and after being promised police protection when he closed the store at night. The protection was provided for three nights but not on the fourth, when an armed assailant shot him in the face. The plaintiff sued, claiming that the police negligently failed to prevent his injuries. Were it not for the exception to immunity provided in § 10(*j*)(1) ("explicit and specific assurances of safety or assistance"), the plaintiff's claim would have been barred by § 10(*j*).

In *Brum* itself, a student was stabbed to death in his high school by three armed individuals, at least one of whom was not a fellow student. They had returned to the school after violent interaction with classmates of the victim that morning, of which the principal was apprised before the later stabbing. The three assailants, visibly armed, returned unimpeded by school officials to the school and stabbed the plaintiff's son. The mother brought suit against the town and several town and school officials alleging that they were negligent in failing to maintain adequate security measures at the school and in failing to protect her son in the face of a known threat. These claims were barred by § 10(*j*).

Were Serrell injured by the inmate Brown rather than by the affirmative action of the intervening correctional officers, her claim as to the officers might well fail under § 10(*j*), were it not for the exception to immunity provided in § 10(*j*)(2), which we shall discuss below. However, her claim of affirmative acts by the correctional officers bears more resemblance to the claim against the probation officer for negligently recommending a sexual predator for a job, not barred by § 10(*j*), in *Bonnie W.* v. *Commonwealth*, 419 Mass. at 126, than it does to the various claims of failures to prevent or diminish harm done by third parties barred by § 10(*j*) discussed in our cases. We need not rest our decision on this basis alone, however, for even if Serrell's claim against the officers were otherwise barred by § 10(*j*), the exception to immunity for claims "based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention," G. L. c. 258, § 10(*j*)(2), would come into play.

The Superior Court judge rejected Serrell's contention that the exclusion found in § 10(*j*)(2) precludes summary judgment for the defendant, stating that Serrell "has not produced any evidence to substantiate her allegation that the correctional officers' intervention was carried out in a negligent manner which increased the risk of harm to her." The record discloses, however, that the plaintiff did produce evidence which fits the § 10(*j*)(2) exclusion, i.e., that the officers' intervention exacerbated the situation to her detriment and, ultimately, her harm. She stated in answer to interrogatories that the officers pushed the iron gate against her while subduing Brown. Whether this course of conduct was necessary in order to rescue Brown's girlfriend and subdue Brown, and thus in the exercise of due care, or whether Brown's girlfriend could have been rescued and Brown subdued without placing bystanders at such risk of harm, is a question left for the jury to decide. We read the facts in the light most favorable to Serrell, who was not required to do more in resisting summary judgment; the defendant did not meet its burden of showing that Serrell has no reasonable expectation of proving an essential element of her case at trial. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Summary judgment should not have been granted.

In view of this, we need not reach the question of whether the trial court judge abused her discretion in denying Serrell's

motion under Mass.R.Civ.P. 56(f) for additional time for discovery. Insofar as one theory of negligence which Serrell alleged (negligent intervention) is not barred by either § 10(*b*) or § 10(*j*), a reasonable time for further discovery on this theory should be permitted.

*Judgment reversed.*