## ROBERTA K. HARRISON *VS.* TOWN OF MATTAPOISETT & others.[1]

No. 09-P-1202.

Bristol. March 24, 2010. - December 1, 2010.

Present: DUFFLY, SMITH, & COHEN, JJ.

*Municipal Corporations,* Police, Governmental immunity. *Negligence,* Police, Governmental immunity, Causation. *Police,* Negligence, Municipality's liability. *Governmental Immunity.*

In a civil action against three towns and the Department of State Police (department), alleging that the towns' police officers and a State police officer were negligent in their participation in a high-speed chase that resulted in the plaintiff's vehicle being struck by the vehicle driven by the suspect that the officers were chasing, summary judgment was properly granted in favor of one town and the department, where the evidence was insufficient to establish that officers from that town and the department participated in the chase, and the town and the department were therefore immune from suit under G. L. c. 258, § 10(*j*) [370-371]; however, given the circumstances of the case, the affirmative acts of officers from the other towns in commencing a pursuit and engaging in a high-speed chase materially contributed to creating the specific condition or situation that resulted in the plaintiff's harm, and therefore, those towns were not immune from suit [371-372]; further, there existed genuine issues of material fact whether the officers from those towns were negligent in their balancing of the relevant policy factors in deciding to pursue the suspect, such that the accident became reasonably foreseeable as a result of their conduct, and whether the suspect's conduct broke the chain of causation [372-375].

CIVIL ACTION commenced in the Superior Court Department on April 1, 2005.

The claims involving the towns were heard by *Frances A. McIntyre,* J., on motions for summary judgment; and the remaining claim was heard by *Richard T. Moses,* J., on a motion for summary judgment.

*Robert K. Harrington* for the plaintiff.

[1]Town of Fairhaven, town of Acushnet, and Department of State Police.

*Brian M. Maser* for town of Mattapoisett.

*Janet Barringer Pezzulich* for town of Fairhaven.

*Charles D. Mulcahy* for town of Acushnet.

*Stephen W. Marshalek*, Assistant Attorney General, for Department of State Police.

SMITH, J. After her vehicle was struck by an individual evading a high-speed police pursuit, the plaintiff, Roberta Harrison, commenced an action against the defendant towns of Mattapoisett, Fairhaven, and Acushnet, as well as the Department of State Police (department). In her complaint, the plaintiff alleges that the above towns' police officers, and a State police officer, were negligent in their participation in the high-speed chase and that the defendants were negligent in training and supervising the police officers involved.[2] A Superior Court judge allowed the towns' motions for summary judgment, concluding that the public duty rule, G. L. c. 258, § 10(j), inserted by St. 1993, c. 495, § 57, provided immunity from suit because the employees of the towns were not the "original cause" of the accident. The judge also noted that the plaintiff's tort claims failed for lack of causation. A second judge allowed the department's motion for summary judgment, ruling that the summary judgment record failed to establish that State police had participated in the high-speed chase.

On appeal, the plaintiff argues that the Superior Court judges committed error in allowing the motions for summary judgment because there were genuine issues of material fact as to whether the defendants (including the department) materially contributed to the third party's reckless driving, which ultimately resulted in the plaintiff's injuries. For that reason, the plaintiff claims the judge erroneously concluded that the defendants were immune under G. L. c. 258, § 10(j). We vacate the grant of summary judgment in favor of Mattapoisett and Fairhaven, and affirm the grant of summary judgment in favor of Acushnet and the department.

*Background.* The summary judgment record discloses the following. On April 4, 2002, about 10:40 A.M., Sergeant Christopher Richmond of the Acushnet police department

---

[2]The plaintiff does not raise the issues of negligent training and supervision in her brief, and we accordingly deem those issues to be waived.

observed William Lessa, a "known suspect," traveling through Acushnet toward Mattapoisett in a Dodge pickup truck. He was not engaged in any criminal activity at that time. Officer Richmond was aware that Lessa had at least seven outstanding warrants for his arrest, including the commission of a felony (breaking and entering a residence), larceny, and drug-related offenses.[3] Officer Richmond was operating an unmarked police vehicle and called for a marked police cruiser to apprehend Lessa. He did not signal or follow Lessa, and there was no evidence in the record before the motion judge that any Acushnet police officers were involved in the subsequent chase.

The towns operated on a shared radio frequency. Officer Robert Dumas of the Mattapoisett police department, operating a marked police cruiser, overheard Officer Richmond's alert, activated his blue lights, observed Lessa's vehicle, and started to pursue it. Lessa immediately accelerated his vehicle and continued south on Acushnet Road. Near the intersection of Crystal Springs Road and Acushnet Road, Lessa nearly hit a police officer assigned to work a road detail. Officer Dumas radioed the dispatcher that Lessa was failing to stop, and gave the dispatcher his location. At this point, another Mattapoisett police vehicle joined the chase.

With the police vehicles in pursuit, the chase proceeded on to Interstate Route 195 (I-195) westbound, a major highway. While on the highway, Lessa changed directions twice by driving his vehicle over the median strip. While Lessa was proceeding westbound on I-195 and nearing the Fairhaven town line, Officer Dumas's supervisor ordered him to notify the Fairhaven police when Lessa entered into Fairhaven so that they could join the pursuit. Officer Dumas did so and Officer Peter Joseph of that department joined the chase. Officer Dumas was the lead vehicle with Officer Joseph's vehicle following behind the Dumas cruiser. Officer Joseph had been ordered by his superior not to take the lead in the chase, but to stay back and observe.

During the chase, Officer Joseph observed Lessa driving his vehicle at speeds of up to one hundred miles per hour (m.p.h.), in a reckless manner causing civilian vehicles to swerve. At that

[3]The information as to the outstanding warrants was provided to the officers in pursuit of Lessa.

time, there were three marked vehicles chasing Lessa. According to Officer Joseph, there was a "lot" of traffic on the road. Lessa exited I-195 onto Route 18. Before Officer Dumas entered Route 18, he notified dispatch that it appeared Lessa was going to take the Weld Street ramp off Route 18. At that point, Officer Dumas's supervisor ordered him to terminate the pursuit. The three cruisers turned off their blue lights and sirens, and terminated the chase before entering the Weld Street ramp.

Lessa exited Route 18 onto Weld Street and entered a highly populated commercial and residential area. Seconds after the chase was called off, Lessa went through a stop sign at a high rate of speed and his vehicle collided with the plaintiff's vehicle. The officers involved in the chase did not see the accident occur, but arrived at the scene shortly after it happened. Lessa was issued a citation charging him with (1) failure to stop for a police officer; (2) operating recklessly so as to endanger; (3) operating a motor vehicle after the right to operate had been suspended; and (4) speeding (one hundred m.p.h. in a fifty-five m.p.h. zone).

*Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as matter of law. Mass.R.Civ.P. 56, 365 Mass. 824 (1974)." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.,* 413 Mass. 534, 536 (1992), citing *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 556 (1976).

"The Massachusetts Tort Claims Act, G. L. c. 258 . . . , allows those with valid claims in tort to recover against governmental entities." *McCarthy* v. *Waltham,* 76 Mass. App. Ct. 554, 561 (2010), quoting from *Lawrence* v. *Cambridge,* 422 Mass. 406, 408 (1996). General Laws c. 258, § 10(*j*), the public duty rule, establishes, however, that the Commonwealth shall, with certain exceptions not relevant here, be immune with respect to "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not

*originally caused* by the public employer or any other person acting on behalf of the public employer" (emphasis added). See *Jacome* v. *Commonwealth*, 56 Mass. App. Ct. 486, 489 (2002). "The reference in § 10(*j*) to an 'original cause' means 'an affirmative act (not a failure to act) by a public employer [or public employee] that creates the "condition or situation" that results in harm inflicted by a third party . . . .' " *Ibid.*, quoting from *Kent* v. *Commonwealth*, 437 Mass. 312, 318 (2002). "In order for a public employer's affirmative act to be the 'original cause' of a 'condition or situation' that results in harmful consequences to another from 'the violent or tortious conduct of a third person,' . . . [such] act must have materially contributed to creating [a] specific 'condition or situation' that resulted in the harm." *Kent* v. *Commonwealth, supra* at 319. Therefore, we do not consider whether the acts of the public employees were negligent at this point in our analysis, but rather we examine the summary judgment record to determine whether their acts "materially contributed to creating the specific 'condition or situation' that resulted in the harm" to the plaintiff by Lessa. *Jacome* v. *Commonwealth, supra* at 489, quoting from *Kent* v. *Commonwealth, supra* at 319.

We begin our analysis by affirming the allowance of the motions of summary judgment as to the town of Acushnet and the department because there was insufficient evidence in the summary judgment record to establish that those entities participated in the chase. For that reason, their actions could not have been a cause of the accident, and they are immune under G. L. c. 258, § 10(*j*).

The acts of the Mattapoisett and Fairhaven officers, on the other hand, in commencing a pursuit of Lessa and engaging in a high-speed chase, stand on different ground. Early in the pursuit, Lessa nearly hit a police officer working a detail. He drove onto a major highway at high speed. The highway had a "lot" of traffic. Motorists had to swerve to get out of his way. Twice he changed directions by driving over the median strip. Observing his reckless driving and flight from police, the officers chose to continue pursuing him at high speed.[4] In these circumstances,

---

[4] We recognize that G. L. c. 89, § 7B, inserted by St. 1934, c. 382, states that a police officer, while driving a police vehicle in the performance of a

the affirmative acts of the Mattapoisett and Fairhaven officers in continuing the high-speed chase materially contributed to creating the specific condition or situation (i.e., Lessa's flight from the police) that resulted in the plaintiff's harm. The fact that the officers stopped the chase before Lessa drove down the ramp does not change the result. The stopping of the pursuit took place only seconds before the crash. There is nothing in the record that establishes that Lessa knew or should have known that the chase had ended. Therefore, in these circumstances, we hold, as a matter of law, that those towns are not immune from the plaintiff's claim.[5]

Our determination as to Mattapoisett's and Fairhaven's immunity, however, does not end our inquiry. We must now consider if there was sufficient evidence in the summary judgment record to establish a genuine issue of material fact as to those towns' employees' negligence. "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between

public duty, "may drive such vehicle at a speed in excess of the applicable speed limit if he exercises caution and due regard under the circumstances for the safely of persons and property. . . ."

[5] In deciding the towns' summary judgment motions, one motion judge relied, in part, on *Anagnos* v. *Hultgren*, 445 F. Supp. 2d 184, 189-190 (D. Mass. 2006). In *Anagnos*, the plaintiff's decedent was struck and killed by a vehicle driven by a suspect who was being pursued by Lowell police officers after they had observed a series of drug transactions. The high-speed chase went through residential neighborhoods at speeds of fifty to seventy m.p.h. While being pursued, the suspect failed to stop at a marked intersection and struck and killed the plaintiff's decedent. The plaintiff sued the city of Lowell (city) for negligence and other causes. The court held that the city was immune from liability under G. L. c. 258, § 10(j), because the officer's conduct was not the original cause of the plaintiff's decedent's death. Contrast *Ward* v. *Boston*, 367 F. Supp. 2d 7, 14-16 (D. Mass. 2005), cited by both motion judges, which held that the city of Boston was not immune under § 10(j) because the police officers involved initiated a high-speed chase without reason and continued the pursuit despite several orders by their supervisor to call it off. A third party was subsequently injured as a result of the suspect driving the wrong way on an interstate highway. On those facts, the court held that the police were the "original cause" of the accident.

While we give great deference to decisions of the Federal courts if they seem persuasive, we are not bound by their interpretation of State statutes. See *Commonwealth* v. *Murphy*, 448 Mass. 452, 462 (2007).

the breach of the duty and the damage."[6] *Jupin* v. *Kask*, 447 Mass. 141, 146 (2006). The defendants do not argue that they owed no duty to the plaintiff. Rather, they claim that the actions of the Fairhaven and Mattapoisett police were not negligent and further, if they were negligent, that negligence was not the actual or proximate cause of the plaintiff's injuries as a matter of law and that Lessa's conduct was an intervening, superseding cause.

Whether analyzed from the standpoint of the officers' duty of care, or from the standpoint of whether the claimed breach thereof proximately caused the plaintiff's injury, the requisite foreseeability is the critical factor. See *Whittaker* v. *Saraceno*, 418 Mass. 196, 198-199 (1994) ("The word 'foreseeable' has been used to define both the limits of a duty of care and the limits of proximate cause. . . . As a practical matter, in deciding the foreseeability question, it seems not important whether one defines a duty as limited to guarding against reasonably foreseeable risks of harm or whether one defines the necessary causal connection between a breach of duty and some harm as one in which the harm was a reasonably foreseeable consequence of the breach of a duty"). "If a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become a superseding cause of the harm." *Kent* v. *Commonwealth*, 437 Mass. at 321. Generally, negligence claims are not resolved through summary judgment because questions of reasonable care and causation usually require fact determinations by a jury. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 56-58 (1983).

Viewing the summary judgment record in the light most favorable to the plaintiff, see, e.g., *New Habitat, Inc.* v. *Tax Collector of Cambridge*, 451 Mass. 729, 731 (2008), we hold that there exist genuine issues of material fact as to whether the officers' conduct in continuing the chase foreseeably resulted in Lessa colliding with the plaintiff's vehicle.

---

[6] Our determination that the officers involved were the original cause of the accident under G. L. c. 258, § 10(j), does not infringe on the jury's role in deciding whether the plaintiff has met her burden in proving each common-law element of her negligence claim.

The need for the police to apprehend individuals who break the law is of vital importance in order to maintain a lawful society. Counterbalancing that point is the obvious: high speed vehicle pursuits are extremely dangerous. One authority has stated that in 2003, there were an estimated 35,000 police pursuits across the United States, and that of those, nearly forty percent or 14,000, resulted in crashes.[7] Of that number, there were 350 pursuit-related fatalities. One-third of those killed were innocent bystanders.[8] Recognizing the danger present in high-speed pursuits, many cities and towns, including Mattapoisett,[9] have extensive guidelines relating to high speed pursuit. The policies are similar. They call for the pursuing officers to balance the risk of continued pursuit against the risk the suspect presents to the community. If a suspect poses a more serious risk to the public because of flagrant and reckless driving, the officer may continue the pursuit for a longer period to minimize the danger to the public. The officer must discontinue the pursuit when it becomes apparent that the pursuit itself presents a more grave danger than letting the suspect go.

The officers involved in the chase in question here were familiar with the policy. Lessa was first observed operating his vehicle normally, not engaged in any criminal activity. The officers knew his identity and where he was likely going. When Lessa fled in a reckless manner, however, they chose to pursue, calling it off only after Lessa left the highway and headed into an urban area. The accident occurred in a matter of seconds after the police called off the chase. Under these circumstances, we hold that there are genuine issues of material fact whether

[7]Statistics compiled by the National Highway Traffic and Safety Administration's Fatality Analysis Reporting System (FARS) for 2003, as reported in O'Connor and Norse, Police Pursuits: A Comprehensive Look at the Broad Spectrum of Police Pursuit Liability and Law, 57 Mercer L. Rev. 511, 511-512 (2006) (Police Pursuits).

[8]The latest final statistics compiled by FARS (1987-2007 Final & 2008 ARF) show that in 2007, there were 425 pursuit-related fatalities, of which 119 were innocent bystanders. We note that because the statistics are compiled by voluntary submission, "some organizations estimate that the figures could be twice as high as stated by FARS." See Police Pursuits, *supra* at 512 n.3.

[9]The judge below stated that Fairhaven had guidelines in regard to police pursuits, but those guidelines do not appear in the record. Their absence, however, does not change our analysis as to the conduct of the Fairhaven police during the pursuit.

the police were negligent in their balancing of the relevant policy factors in deciding to pursue Lessa, such that the accident became reasonably foreseeable as a result of their conduct. It is likewise an open question whether Lessa's conduct broke the chain of causation. These are matters for the jury. In so concluding, we emphasize that "[t]he question whether the risk of injury was foreseeable is almost always one of fact." *Moose* v. *Massachusetts Inst. of Technology*, 43 Mass. App. Ct. 420, 425 (1997).

The grant of summary judgment in favor of Acushnet and the department is affirmed. That part of the judgment granting summary judgment in favor of Mattapoisett and Fairhaven is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*