NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-645                                        Appeals Court

NIQUEL REID vs. CITY OF BOSTON.

No. 18-P-645.

Suffolk.     January 11, 2019. - July 12, 2019.

Present:  Massing, Desmond, & McDonough, JJ.

Massachusetts Tort Claims Act.  Municipal Corporations,
    Liability for tort, Governmental immunity.  Negligence,
    Police, Municipality, Proximate cause, Governmental
    immunity.  Police, Negligence, Municipality's liability.
    Proximate Cause.  Search and Seizure, Protective frisk.
    Practice, Civil, Directed verdict, Judgment notwithstanding
    verdict.

Civil action commenced in the Superior Court Department on May 31, 2013.

The case was tried before Edward P. Leibensperger, J., and a motion for judgment notwithstanding the verdict was considered by him.

Nicole M. O'Connor, Senior Assistant Corporation Counsel (Nieve Anjomi, Assistant Corporation Counsel, also present) for the defendant.
    Christine R. Fitzgerald for the plaintiff.

MASSING, J.  This appeal concerns the application of the

Massachusetts Torts Claim Act (MTCA), G. L. c. 258, in the

context of police activity.  The plaintiff, Niquel Reid, was conversing calmly on the sidewalk with her sister's boyfriend, Tyrone Cummings, when three Boston police officers, responding to a 911 call from the plaintiff's sister, approached.  One of the officers, without warning Cummings or his fellow officers, grabbed Cummings from behind, intending to conduct a patfrisk.  Cummings responded by removing a firearm from his waistband and exchanging gunfire with the officers.  In the end, the officers fatally shot Cummings, but not before he shot the plaintiff in the leg.  A jury awarded the plaintiff damages under the MTCA for the officers' negligence.  The city of Boston[1] argues that it is immune from liability under the MTCA or, in the alternative, that the officers' conduct was not the proximate cause of the plaintiff's injuries.  We affirm.

Background.[2]  On the morning of June 14, 2011, the plaintiff received a call from her sister, who said she would be coming to the plaintiff's nearby home after putting her daughter on a school bus.  Minutes later, the plaintiff's sister called again.

_____

[1] The individual officers' motion to dismiss was allowed, and trial proceeded only on the plaintiff's claim against the city.  See G. L. c. 258, § 2 (establishing liability of public employers, but not public employees, for injury or death caused by employees acting within scope of their employment).

[2] We recite the facts presented to the jury in the light most favorable to the plaintiff.  See Tosti v. Ayik, 394 Mass. 482, 494 (1985).

The plaintiff could hear her sister saying to someone, "Why are you following me . . . stop following me . . . why are your hands behind your back[?]"  The plaintiff was aware that her sister and her sister's boyfriend, Cummings, were not getting along.  Sensing trouble, the plaintiff told her sister that she would pick her up.

When the plaintiff arrived at her sister's home, Cummings was standing in the street in front of his car.  The plaintiff parked her car and walked over to speak with him.  Cummings spoke in a normal tone of voice and was not belligerent.  The plaintiff did not see any weapons on Cummings, and it did not appear as if he had been in a fight.  While the plaintiff and Cummings were talking, the plaintiff's sister emerged from her house with her daughter, put her daughter in the plaintiff's car, and then got into the car herself.  The plaintiff's sister did not appear injured or frightened of Cummings.  At no point during their interaction, which lasted less than five minutes, did the plaintiff feel afraid of Cummings.

Unbeknownst to the plaintiff, while she was talking to Cummings, her sister had called 911.  Boston Police Officers Shawn Marando and Charbel Kamel, riding in a cruiser driven by Marando, were dispatched to the scene; Officer Timothy Denio, working alone, heard the call and decided to assist.  Over the police radio, the dispatcher described Cummings and relayed the

substance of the 911 call as, "[M]an threatening to kill . . . his girlfriend. . . . But no known weapons, no mention of weapons." The dispatcher also sent supplemental text messages to the mobile data terminals in the officers' cruisers. These supplemental messages included a physical description of Cummings and informed the officers that the caller and her eight year old daughter were in a car parked outside the residence where the assault had occurred, that the suspect was standing outside speaking with the caller's sister, and that there were "no weapons." Only Kamel, who was not driving, looked at the supplemental texts, and he only glanced at the beginning portion containing the suspect's description and the summary of the incident. He considered the status of the situation to be "unknown weapons," because "the dispatcher does not know what's going on the scene."

The officers arrived to find the plaintiff and Cummings on the sidewalk; they erroneously assumed that the plaintiff was the 911 caller. Marando and Kamel approached and stood beside the plaintiff and Cummings, all within arm's length of one other, while Denio took up a position behind his fellow officers. Cummings and the plaintiff were speaking calmly, and Cummings's demeanor did not change when the officers approached. The plaintiff did not appear to be injured. The officers did not see any indication of weapons. Marando asked the plaintiff

and Cummings if they had anything on them. The plaintiff replied, "No," as did Cummings. Marando asked if either of them called the police, and both responded that they had not. Marando then said, "[Y]ou both look all right," and asked if they were "okay." The plaintiff said, "I'm okay," and Cummings said, "I'm good."

At that moment, Kamel came up behind Cummings, grabbed his arm, and reached for his waist, intending to conduct a patfrisk. Kamel did not tell Cummings, or the other officers, what he was going to do. Kamel's sudden action caught his partner Marando by surprise because he was in the middle of "deescalating" the situation and making sure everyone was calm. Marando testified that he would not have made "an aggressive move" such as initiating a patfrisk in such circumstances.

Cummings reacted to Kamel's sudden contact by pushing Kamel away and drawing a firearm from his waistband. As Cummings backed away from the officers, he pointed the gun toward Marando and fired. Marando and Denio returned fire. After Marando's first shot struck Cummings, Cummings started to fall to the ground, but he continued to discharge his weapon. The plaintiff tried to get out of the way, but her path was blocked by a fence between the sidewalk and a house. During the shootout, Cummings shot the plaintiff in her left leg; Marando was also shot in the leg. Cummings died from multiple gunshot wounds.

The plaintiff sued the city for negligence, and the case proceeded to trial. At the close of the plaintiff's case, the city moved for a directed verdict, which the judge denied. The city unsuccessfully renewed its motion at the close of all the evidence. By special verdict, the jury concluded that "one or more police officers [were] negligent with respect to their actions at the scene . . . prior to shots being fired" and that "the negligence of the police officer(s) prior to shots being fired [was] a substantial contributing factor in causing injuries to [the] plaintiff." The jury awarded her $253,391.73, which was reduced by statute to $100,000. See G. L. c. 258, § 2. After entry of the amended judgment, the city filed a motion for judgment notwithstanding the verdict (judgment n.o.v.) or for a new trial, which the judge denied. The city appeals from the amended judgment and from the order denying its motion for judgment n.o.v.

Discussion. 1. Standard of review. When reviewing the denial of a motion for directed verdict or judgment n.o.v., we apply the same standard as the trial judge. See O'Brien v. Pearson, 449 Mass. 377, 383 (2007). Our task, "taking into account all the evidence in its aspect most favorable to the plaintiff, [is] to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for

the plaintiff." Tosti v. Ayik, 394 Mass. 482, 494 (1985), quoting Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass. App. Ct. 252, 254 (1983). "The court will consider whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn' in favor of the non-moving party." McNamara v. Honeyman, 406 Mass. 43, 46 (1989), quoting Poirier v. Plymouth, 374 Mass. 206, 212 (1978).

2. MTCA immunity. The city contends that it is immune from suit under the MTCA's "statutory public duty rule." Carleton v. Framingham, 418 Mass. 623, 627 (1994). Specifically, the city relies on G. L. c. 258, § 10 (h), which bars claims based on the failure to provide police protection, and G. L. c. 258, § 10 (j), which bars claims based on the tortious conduct of third parties "not originally caused by the public employer." We agree with the trial judge that these exclusions do not apply.

a. Section 10 (h). The city asserts that because the plaintiff's theory of liability is based on failure to provide police protection -- that is, the officers' failure to prevent Cummings from shooting her -- it is immune under § 10 (h).[3]

_____

[3] Under G. L. c. 258, § 10 (h), the MTCA does not apply to "any claim based upon the failure to establish a police department or a particular police protection service, or if police protection is provided, for failure to provide adequate

Specifically, the city invokes the clause of G. L. c. 258, § 10 (h), providing immunity from claims based on "failure to provide adequate police protection."

Section 10 (h) "immunize[s] a municipality when the criminal acts of a third person are a cause of the plaintiff's harm, and the police were negligent in not preventing that criminal conduct." Carleton, 418 Mass. at 629. Thus, a town could not be held liable for a fatal automobile accident that occurred after a police officer first failed to prevent a person the officer knew to be drunk from getting into a car and driving away, and then abandoned pursuit when the driver did not stop for the officer's flashing lights. See id. at 624, 627 n.4, 629. See also Makynen v. Mustakangas, 39 Mass. App. Ct. 309, 310, 314 (1995) (§ 10 [h] provided immunity where, one-half hour before intoxicated driver caused head-on collision, police officer stopped driver, issued warning for speeding, and allowed driver to drive away). Nor could a town be held liable for the shooting of a domestic violence victim based on its police officers' repeated refusals to arrest the victim's estranged

---

police protection, prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law, but not including claims based upon the negligent operation of motor vehicles, negligent protection, supervision or care of persons in custody, or as otherwise provided in clause (1) of subparagraph (j)."

husband for violating a G. L. c. 209A protective order. See Ford v. Grafton, 44 Mass. App. Ct. 715, 716-720, 724 (1998).

As these cases illustrate, § 10 (h) shields municipalities from claims where police officers negligently failed to prevent harm posed by third parties. Here, the plaintiff's successful theory of liability was not that the police officers failed to protect her from a threat, but rather that the officers' affirmative conduct created a danger that did not previously exist. The city contends, however, that because the officers were responding to a 911 call, they were engaged in providing police protection, and any claim based on acts the officers performed negligently in the course of their emergency response amounts to failure to provide adequate police protection. See Anderson v. Gloucester, 75 Mass. App. Ct. 429, 433-434 (2009) ("§ 10 [h] and [j] are based on a legislative recognition that public employees who respond to emergencies are called upon to act swiftly, often without the time for investigation and deliberate reflection available in other circumstances"). The exclusion applies, so the city argues, even if the officers' affirmative acts were negligent and contributed to the plaintiff's injury.

The exclusion in § 10 (h) for failure to provide adequate police protection is intended to exclude claims based on the "failure to investigate, detect crime, apprehend, arrest, and

enforce the law."  Ford, 44 Mass. App. Ct. at 725.  The exclusion does not extend to every negligent act that a police officer commits in the course of providing police protection. See id., citing Glannon, Liability for "Public Duties" Under the Tort Claims Act:  The Legislature Reconsiders the Public Duty Rule, 79 Mass. L. Rev. 17, 19, 24 (1994) (Glannon) (§ 10 [h] does not exclude claims "based on collateral negligence in the course of any one of these police functions").

The language of the MTCA exclusion for failure to provide fire protection services, codified in neighboring § 10 (g) of c. 258, bolsters this interpretation of § 10 (h). Section 10 (g) incorporates language similar to that of § 10 (h), but in addition includes express immunity for negligence in the course of fighting a fire:  it excludes "any claim based upon the failure to establish a fire department or a particular fire protection service, or if fire protection service is provided, for failure to prevent, suppress or contain a fire, or for any acts or omissions in the suppression or containment of a fire" (emphasis added).  G. L. c. 258, § 10 (g).  Thus, § 10 (g) applies even if a firefighter's actions in the course of providing fire protection services add fuel to the fire, so to speak.  Section 10 (h), by contrast, does not exclude acts or omissions in the provision of police protection. Had the Legislature intended to immunize all negligent acts of

police officers providing police protection, it would have specifically done so.  See Phillips v. Equity Residential Mgt., L.L.C., 478 Mass. 251, 259 (2017), quoting Brady v. Brady, 380 Mass. 480, 484 (1980) ("a statutory expression of one thing is an implied exclusion of other things omitted from the statute").  We will not read into § 10 (h) words the Legislature used only in § 10 (g).  See Commonwealth v. Galvin, 388 Mass. 326, 330 (1983).[4]

Ariel v. Kingston, 69 Mass. App. Ct. 290 (2007), on which the city primarily relies, does not govern the present case.  The plaintiff in Ariel was the passenger in a motor vehicle driven by her daughter.  Id. at 291.  The daughter approached an intersection where an accident had occurred and two police officers were directing traffic.  Id.  She had a green light, so she proceeded through the intersection.  Id. at 291-292.  Simultaneously, another car, which the plaintiff alleged was waved through a red light by one of the town's officers, entered

---

[4] The city concedes that § 10 (h) does not immunize "every act of a police officer in the course of his duties."  Relying on an unpublished decision of the United States District Court for the District of Massachusetts, however, the city contends that the only negligent police conduct for which a municipality may be held liable is conduct that is the "direct and primary cause" of a plaintiff's harm, not conduct that leads to injury to a plaintiff by a third party.  Nothing in the language of § 10 (h) or any published Massachusetts decisions construing it supports this interpretation.  Indeed, § 10 (j) primarily governs liability under the MTCA for tortious acts of third parties.

the intersection and collided with the daughter's car.  Id. at 292.  We held that the town was immune under § 10 (h) because "police officers' direction of traffic on a public way constitutes a form of providing police protection to the public for the risks involved in motor vehicle traffic."  Id. at 293.

In Ariel, the officers were providing police assistance to mitigate a dangerous condition.  Id.  In this case, by contrast, the situation that the officers encountered upon their arrival was calm, and the plaintiff did not appear to be in immediate danger.  Cummings was not brandishing a firearm or engaging in threatening conduct.  The dangerous situation that resulted in the plaintiff's injury arose only after Kamel grabbed Cummings, without communicating his plan to the other officers and without taking steps to impede Cummings's ability to reach for a weapon.  Thus, unlike the cases where § 10 (h) applies, the plaintiff's claim was based on the officers' affirmative actions that created a harmful situation that did not previously exist.

The plaintiff prevailed at trial not by showing that the police failed to prevent Cummings from committing a crime, and not by showing that the police failed to provide adequate protection to the public in an emergency situation, but rather by showing that the officers' negligent actions in performing their duties created a harm that did not otherwise exist, causing her injury.  Section 10 (h) does not bar such a claim.

b.  Section 10 (j).  On appeal, the city also argues that its motions for directed verdict and for judgment n.o.v. should have been granted because it is immune from liability under § 10 (j), which shields public employers from suits arising out of the violent conduct of third parties.[5]

Because the city did not assert § 10 (j) immunity in its motions for directed verdict, the plaintiff argues in her brief that the city has waived this defense.  Ordinarily we would agree -- a defense not asserted in a motion for directed verdict is waived and cannot be resurrected in a motion for judgment n.o.v.  See Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 115 (2000); Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 34-35 (1991).  However, a prior decision of this court held that because G. L. c. 258, § 10, defenses relate to subject matter jurisdiction, the Commonwealth did not waive its immunity under G. L. c. 258, § 10 (d), by filing an untimely motion to

---

[5] Under G. L. c. 258, § 10 (j), the MTCA does not apply to "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." Section 10 (j) goes on to enumerate three exceptions to the exclusion it creates.  Pertinent here, "This exclusion shall not apply to:  . . . (2) any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention."

dismiss.  See Vining v. Commonwealth, 63 Mass. App. Ct. 690, 696 (2005).  We added, in dicta, that such defenses "may be raised for the first time on appeal or may even be raised by a court sua sponte."  Id.  Accordingly, we address the merits.[6]

The city "is immune from suit under G. L. c. 258, § 10 (j), for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, unless it 'originally caused' the 'condition or situation' that resulted in the harmful consequence."  Kent v. Commonwealth, 437 Mass. 312, 317 (2002).  "[T]he principal purpose of § 10 (j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party."  Brum v. Dartmouth, 428 Mass. 684, 696 (1999).

Section 10 (j) provides immunity when a third party injures the plaintiff, and the public employer's only fault was its failure to prevent the situation or harm.  "To have 'originally caused' a condition or situation for the purposes of § 10 (j), the public employer must have taken an affirmative action; a failure to act will not suffice."  Cormier v. Lynn, 479 Mass. 35, 40 (2018).  See, e.g., Brum, 428 Mass. at 686-687, 696 (town

---

[6] The city did not file a reply brief or otherwise respond to the plaintiff's waiver argument, and neither party cited Vining, supra, let alone addressed its applicability here.  In these circumstances, we are reluctant to limit the scope of our prior decision.

not liable for stabbing of student on high school grounds based on failure to maintain adequate security measures to protect student from known threat); Bonnie W. v. Commonwealth, 419 Mass. 122, 126 (1994) (Commonwealth not liable for rape committed by parolee based on parole officer's failure to supervise parolee); Stahr v. Lincoln Sudbury Regional High Sch. Dist., 93 Mass. App. Ct. 243, 247 (2018) (school district not liable for injury to field hockey player struck by teammate's stick during practice session based on coaches' lack of supervision and inadequate instruction).

But § 10 (j) does not provide immunity where a public employee's affirmative act "creates the 'condition or situation' that results in harm inflicted by a third party." Kent, 437 Mass. at 318, quoting Brum, 428 Mass. at 695. In other words, § 10 (j) does not apply in "situations in which governmental employees set in motion a chain of events that allow[] violent people to harm others." Anderson, 75 Mass. App. Ct. at 436. See, e.g., Harrison v. Mattapoisett, 78 Mass. App. Ct. 367, 371-372 (2010) (officers' conduct in commencing high-speed chase materially contributed to suspect's flight, resulting in collision with plaintiff's car); Serrell v. Franklin County, 47 Mass. App. Ct. 400, 401, 405 (1999) (correction officers' tactics in intervening to restrain inmate in visitor's room caused iron gate to pin down and injure visitor). See also

Dudley v. Massachusetts State Police, 91 Mass. App. Ct. 616, 620-621 (2017) (officer created harmful situation when he released trained police canine to apprehend fleeing suspect and canine bit plaintiff).[7]

We need not decide whether the officers' actions here "originally caused" the plaintiff's injury -- the question "described as the 'most difficult issue posed' by the amendments to the [MTCA]," Kent, 437 Mass. at 318, quoting Glannon, 79 Mass. L. Rev. at 26 -- because the immunity provided by § 10 (j) does not extend to claims arising from the violent conduct of third parties that are "based upon the intervention of a public employee which causes injury to the victim or places the victim

---

[7] Whether a decision, as opposed to an act, of a public employer is the original cause depends on how close a connection it bears to the plaintiff's injury. Compare Devlin v. Commonwealth, 83 Mass. App. Ct. 530, 530-531, 535 (2013) ("affirmative decision to allow convicted inmates to work in an area where civilly committed individuals were housed and treated," materially contributed to situation in which inmate struck and injured plaintiff); Gennari v. Reading Pub. Sch., 77 Mass. App. Ct. 762, 764-765 (2010) (elementary school principal's decision to hold recess in concrete courtyard materially contributed to condition resulting in first grader being pushed by another student into sharp concrete bench); with Cormier, 479 Mass. at 41 (requiring students to attend school and placing them in same class "too remote as a matter of law to be the original cause" of one student pushing another down staircase, resulting in permanent paralysis [citation omitted]); Kent, 437 Mass. at 319 (parole board's decision to release inmate who shot officer eight years later "too remote" to be original cause of shooting); Jane J. v. Commonwealth, 91 Mass. App. Ct. 325, 330-331 (2017) (hospital's decision to allow committed male and female patients access to shared common room too remote to be original cause of plaintiff's rape).

in a worse position than he was in before the intervention."
G. L. c. 258, § 10 (j) (2).[8]  Officer Kamel's intervention placed
the plaintiff in a worse position than she was in previously.
By approaching Cummings from behind and suddenly seizing him --
without informing his fellow officers, or Cummings, of his
intent -- Kamel escalated what had previously been a calm,
controlled encounter into a shootout.  See Williams v. O'Brien,
78 Mass. App. Ct. 169, 176 (2010) (public employer not immune
from claim based on correction officers' acts of calling
plaintiff "snitch" in front of other inmates and placing him in
cell with hostile inmate, resulting in plaintiff being stabbed
by cellmate; officers' intervention "place[d] the victim in a
worse position than he was in before" [citation omitted]);
Serrell, 47 Mass. App. Ct. at 405 (officers' intervention in
subduing inmate, injuring plaintiff in process, "exacerbated the
situation to her detriment").  The plaintiff's successful theory
of recovery was not that the police failed to prevent Cummings
from shooting her -- it was that Cummings never would have

---

[8] The Supreme Judicial Court has stated, "In order for a
public employer's affirmative act to be the 'original cause' of
a 'condition or situation' that results in harmful consequences
to another from 'the violent or tortious conduct of a third
person,' we hold that the act must have materially contributed
to creating the specific 'condition or situation' that resulted
in the harm."  Kent, 437 Mass. at 319.  While it is difficult to
imagine an intervention described in § 10 (j) (2) that does not
materially contribute to creating a harmful situation, we need
not wade into this interpretive quagmire.

started shooting if the officers had not negligently intervened. See Stahr, 93 Mass. App. Ct. at 249 (for § 10 [j] [2] to apply, claim must be based on "an affirmative act on the part of the intervener" rather than omissions). For this reason, § 10 (j) does not preclude liability.

3. Proximate cause. Finally, the city argues that it was entitled to a directed verdict because Cummings's criminal acts were a superseding cause that broke the chain of proximate causation between the officers' "preshooting" conduct and the plaintiff's injury.

In addition to proving that a defendant's negligence actually caused the plaintiff's harm, "the plaintiff must show that the negligent conduct was a proximate or legal cause of the injury." Kent, 437 Mass. at 320. To establish proximate cause, the plaintiff must prove that her injury was a reasonably foreseeable result of the defendant's negligence. See Jesionek v. Massachusetts Port Auth., 376 Mass. 101, 105-106 (1978). The chain of proximate cause may be broken by intervening acts of a third party. See Wallace v. Ludwig, 292 Mass. 251, 255 (1935); Harrison, 78 Mass. App. Ct. at 373. However, the intervening acts of a third party that are a reasonably foreseeable result of the original negligence will not break the chain of causation, even if those acts are criminal. See Jupin v. Kask, 447 Mass. 141, 148 (2006); Mullins v. Pine Manor College, 389

Mass. 47, 62 (1983). "It is irrelevant whether [the defendant] foresaw or should have foreseen the specific danger that occurred . . . . It is sufficient that the same general kind of harm was a foreseeable consequence of the defendant's risk-creating conduct." Jupin, supra at 149 n.8. See Michnik-Zilberman v. Gordon's Liquor, Inc., 390 Mass. 6, 12 (1983).

Causation is generally a factual question for the jury. See Mullins, 389 Mass. at 58. "Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury." Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 327 (1973). "The mere existence of other possible causes [does] not preclude the jury from finding that the defendants' negligence was the proximate cause of the plaintiff's damage." Id. at 329.

The plaintiff presented sufficient evidence for the jury to conclude that Cummings's violent reaction was a reasonably foreseeable result of the officers' preshooting negligence. The city's manual on the use of force recognizes that patfrisks are dangerous because the subject "may have a dangerous weapon." The plaintiff's expert, and the officers themselves, testified that it is reasonably foreseeable that the subject of a patfrisk will be armed and dangerous. Kamel agreed that patfrisks are dangerous because the subject may be expected to possess a weapon, remove it, and cause an altercation. Indeed, Kamel

testified that based on the way Cummings was standing, and the fact that his carotid artery was "pounding," he was probably armed.  A rational view of the evidence allowed the jury to find that Cummings's acts were reasonably foreseeable and, indeed, actually foreseen.  See Jupin, 447 Mass. at 149.

We are not persuaded by the city's argument that we will create a disincentive for police officers to employ patfrisks and other safety measures unless we hold, as a matter of public policy, that Cummings's violent response to Kamel's sudden and unexpected approach broke the chain of causation. Municipalities will not be liable every time an attempted patfrisk goes awry.  To prevail, a plaintiff must show that the officers acted negligently, breached their duty of care, and actually caused injury -- inherently fact-specific inquiries. And this case presents unique facts.  The officers failed to read supplemental text messages informing them of information crucial to responding appropriately to the scene.  When the officers arrived, they did not separate the parties, who were within arm's reach of each other.  Kamel failed to inform the other officers that he intended to conduct a patfrisk, and then proceeded to do so without restraining Cummings or taking any necessary precautions.  Moreover, as the plaintiff's expert in police practices testified, the officers did not encounter a dangerous, fast-moving situation.  When confronting a perilous

and quickly evolving emergency, even officers' hasty actions may be reasonable in the circumstances, or injury to bystanders unavoidable.  The jury reasonably concluded that that was not the case here.

Conclusion.  The amended judgment and the order denying the motion for judgment n.o.v. are affirmed.

So ordered.