Anne F. Smith, administratrix, *vs.* Commonwealth & another[1]

(and a companion case[2]).

Suffolk.    January 7, 1964. — May 7, 1964.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Commonwealth,* Tort liability, Waterworks. *Metropolitan District Commission. Waterworks. Practice, Civil,* Appeal.

An appeal under G. L. c. 231, § 96, lies from an order by a judge of the Superior Court allowing a motion to dismiss founded upon matter of law apparent on the record.   [455]

G. L. c. 258, § 1, per se, imposes no liability in tort on the Commonwealth or its agent the Metropolitan District Commission for personal injuries or property damage caused by the bursting of a water main constructed and maintained by the commission.   [456]

In view of the design of St. 1895, c. 488, to create and maintain a pure and adequate supply of water, by a system of waterworks, for Boston and towns and cities surrounding it, a provision in a succeeding statute, G. L. c. 92, § 15, that the Metropolitan District Commission shall "keep all waterworks constructed or maintained by it and all bridges built by it across the reservoir upon the Nashua river safe," does not limit the commission's duty respecting safety to waterworks and bridges built

[1] Metropolitan District Commission.

[2] The companion case is by Anne F. Smith against the Commonwealth and the Metropolitan District Commission.

across such reservoir, but imposes that duty in connection with all waterworks constructed or maintained by the commission, including a water main located in Somerville.   [456–458]

The provision of G. L. c. 92, § 32, that "Any person injured in his property by the entry upon or use of his land by the [Metropolitan District] commission under this section may recover his damages under chapter seventy-nine," the eminent domain chapter, does not embrace a claim for property damage caused by the bursting of a water main constructed and maintained by the commission.   [458]

The provision in G. L. c. 92, § 15, carried over from St. 1895, c. 488, § 10, that the Commonwealth "shall be exclusively responsible for all damages caused" by waterworks constructed or maintained by the Metropolitan District Commission "or by any defect or want of repair therein," constitutes a reservation by the Commonwealth of the right to determine, upon the occurrence of such damage, whether to make reimbursement therefor, and does not constitute consent by the Commonwealth to be subject to tort liability for damage caused by the bursting of a water main constructed and maintained by the commission.   [460, 461]   CUTTER, J., while agreeing that the Commonwealth did not so consent, was of opinion that there was not such a reservation by it in the terms of the statute.

The terms of St. 1957, c. 689, authorizing the Metropolitan District Commission, subject to the approval of the Attorney General, to reimburse property owners for damage caused by the bursting of a certain water main, preclude a construction thereof that the Commonwealth thereby consented to be held answerable in its own courts for such damage.   [460]

Neither the Commonwealth nor the Metropolitan District Commission could be held liable in a proceeding under G. L. c. 258 for personal injuries and property damage allegedly caused, through negligence of the commission, by the bursting of a water main constructed and maintained by it.   [461]

Two PETITIONS filed in the Superior Court on July 20, 1959.

The petitioner appealed from the allowance of motions to dismiss by *Gourdin, J.*

*Robert A. Shea* for the petitioner.

*Samuel W. Gaffer,* Assistant Attorney General, for the respondents.

KIRK, J.   These two petitions are brought to recover compensation for personal injuries and for damage to personal property allegedly caused by the bursting in Somerville on July 26, 1957, of a water main which was constructed and controlled by the respondent Metropolitan District Commission (the M. D. C.), an agency of the Commonwealth. The first petition, originally brought by John M.

Smith, since deceased, is now prosecuted by his widow as administratrix who seeks compensation for personal injuries suffered by Smith and for consequential damages for medical expenses incurred by him for his wife. The second petition, brought by Mrs. Smith in her own right, seeks compensation for personal injuries and for damage to her personal property.

Both petitions allege, in summary, that the injuries were caused (1) by the negligence of the M. D. C. in its construction, operation, and maintenance of the waterworks and (2) by a defective condition in the waterworks. Both petitions refer generally to "an act of . . . [the] Legislature to compensate . . . for damages that may have occurred . . . as a result of the bursting of said water main . . . ."

To each petition the respondents filed a demurrer and a motion to dismiss. Although the petitions are plainly demurrable, it appears that a hearing was had only on the motions to dismiss. The grounds of each motion were that: (1) the Superior Court had no jurisdiction of the action or claim; (2) the petition failed to allege any action or claim for which the Commonwealth had submitted itself to the jurisdiction of the court; (3) there is no statutory liability on the Commonwealth or the M. D. C. for the cause alleged; (4) the Commonwealth is not subject to G. L. c. 223 or other procedural incidents of ordinary law suits. The motions set forth no facts not already apparent on the record and are founded solely upon it. The motions to dismiss were allowed, and from their allowance the petitioner has appealed. Since the orders of the judge are founded on matter of law apparent on the record and, if allowed to stand, would be decisive of the case, the appeals are properly before us. G. L. c. 231, § 96. *Graustein* v. *Boston & Maine R.R.* 304 Mass. 23, 25. See *Summers* v. *Boston Safe Deposit & Trust Co.* 301 Mass. 167, 169. We are called upon to decide whether the petitions state any action or claim that affords a basis for recovery.

It is fundamental that the Commonwealth, along with its duly constituted public agencies, cannot be sued for the torts of its officers, agents or employees except by a clear mani-

festation of consent thereto by statute.  *Burroughs* v. *Commonwealth,* 224 Mass. 28, 29.  *Glickman* v. *Commonwealth,* 244 Mass. 148, 149–150.  The statutory "intent to confer such authority should be clearly manifested."  *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 29.  As was stated by Qua, C.J., "It is axiomatic that the Commonwealth can be held answerable in its own courts only to the precise extent and in the precise manner to and in which it has submitted itself to their jurisdiction by statute."  *Putnam Furniture Bldg. Inc.* v. *Commonwealth,* 323 Mass. 179, 185, and cases cited.  Accordingly, we examine the relevant statutes to determine whether, in the light of the allegations in the petitions, the Commonwealth or the M. D. C. is subject to liability in tort.

It is too clear for extended discussion that G. L. c. 258, § 1,[3] under which both parties have assumed the petitions were brought, is procedural in purpose and is not in itself the source of any new rights against the Commonwealth. "The object of . . . [G. L.] c. 258 [§ 1], was not to create a new class of claims for which the Commonwealth had never been held responsible, but to provide a convenient tribunal for the hearing of claims of the character that civilized governments had always recognized, although the satisfaction of them has usually been sought by direct appeal through the Legislature."  *Arthur A. Johnson Corp.* v. *Commonwealth,* 306 Mass. 347, 351.  *Executive Air Serv. Inc.* v. *Division of Fisheries & Game,* 342 Mass. 356, 359, and cases cited.  It follows that G. L. c. 258, § 1, per se, imposes no liability in tort upon the respondents.

The petitioner contends, however, that the Commonwealth has consented to be subject to liability in tort by the express provisions of G. L. c. 92, § 15, which provides, in part: "The commission [the M. D. C.] shall keep all waterworks constructed or maintained by it and all bridges built by it across the reservoir upon the Nashua river safe, and shall have charge of, use, maintain and operate the same, and the commonwealth shall be exclusively responsible for all dam-

---

[3] "The superior court, except as otherwise expressly provided, shall have jurisdiction of all claims at law or in equity against the commonwealth."

ages caused thereby or by any defect or want of repair therein.'' This contention will be considered later in this opinion.

We deal first with the argument of the respondents that the quoted provision is limited in its application to water-works and bridges built across the reservoir on the Nashua River. We do not agree. We conclude from a study of St. 1895, c. 488, the original act from which G. L. c. 92, §§ 10–32 (Metropolitan Water District) descends, that the Legislature intended a broader application of § 15. Statute 1895, c. 488, read as a whole, discloses a grand design, worked out in detail, to create and maintain a pure and adequate supply of water, by a system of waterworks, for the inhabitants of Boston and of the twelve surrounding towns and cities, including Somerville, all constituting the Metropolitan Water District. It imposed upon the Metropolitan Water Board broad responsibilities for the construction and maintenance of the system. The Metropolitan Water Board (a predecessor of the M. D. C.) established by St. 1895, c. 488, § 1, were by various sections of c. 488, ordered or authorized, among other things, to acquire real estate, ponds and other water basins, and specifically the south branch of the Nashua River; to construct a storage reservoir upon the Nashua River; to take the Chestnut Hill Reservoir and pumping station; to take all of the city of Boston water supply system westward of the Chestnut Hill Reservoir; to take the water supply systems of named cities and connect them with the Chestnut Hill Reservoir and Spot Pond; and to construct buildings, lay pipes, alter water courses, and remove and rebuild dams (§§ 3, 4, 6, 7, 9). By St. 1895, c. 488, § 10, it was provided that on or before January 1, 1898, the board ''shall commence the operation of the works taken by them from the city of Boston, and *shall thereafter keep the same and all water works constructed by them, and all bridges which they may build across said reservoir upon the Nashua river,* . . . *safe,* and shall have charge of, use, maintain and operate the same, and the Commonwealth shall exclusively be responsible for all damages caused thereby or by any defect or want of repair therein . . .'' (emphasis supplied). By

thus setting off between the word "keep" and the word "safe" the words which we have italicized the Legislature made clear its intention to impose upon the board the duty to keep safe: (1) the waterworks taken by them from the city of Boston; (2) *all* waterworks constructed by them under the act; and (3) all bridges they might build across the reservoir on the Nashua River. Since the fundamental purposes of St. 1895, c. 488, and the responsibilities of the board [the M. D. C.] under it have been retained in G. L. c. 92, §§ 10–32, we conclude that the legislative intent to give the indicated application to St. 1895, c. 488, § 10, remained unchanged when that section was recast in the language now found in G. L. c. 92, § 15. In its present form § 15 includes "all water works constructed or *maintained* by [the M. D. C.]" (emphasis supplied). The M. D. C. is, therefore, under G. L. c. 92, § 15, charged with the duty to keep safe the water main which is the subject of the litigation.

It does not follow, however, that if the M. D. C. has failed in its duty to keep the water main safe, the M. D. C. or the Commonwealth must respond in damages for the consequences of the failure. The sole express provision in G. L. c. 92, §§ 10–32 (Metropolitan Water District), relating to the right to recover damages is found in the sentence in § 32 which reads: "Any person *injured in his property by the entry upon or use of his land* by the commission under this section may recover his damages under chapter seventy-nine [eminent domain]" (emphasis supplied). It is obvious that the damages sought in the petitions do not come within the purview of the eminent domain statute.

We turn to further consideration of the language, already referred to, in G. L. c. 92, § 15, which provides that "*the commonwealth shall be exclusively responsible for all damages caused*" by any defect or want of repair in the waterworks constructed or maintained by the M. D. C., and the bridges built by it across the reservoir upon the Nashua River (emphasis supplied). The significance of the emphasized provision becomes clear if reference is again made to St. 1895, c. 488. As already noted, c. 488, § 10, is the antecedent of G. L. c. 92, § 15. In the carefully conceived plan

and sequence of St. 1895, c. 488, § 10 had a pivotal position. Sections 1 and 2 of the act provided for the establishment and organization of the board; § 3 set out broadly the objectives which the board were to achieve; §§ 4 to 8, inclusive, contained a succession of powers and duties conferred upon the board, especially with reference to land takings, to enable the board to accomplish the prescribed objectives; § 9 authorized the board in comprehensive terms to undertake whatever engineering projects were necessary to carry out the purpose of the act, whether on the lands authorized to be taken, or by the entry upon and use of "the lands of others." It is at this point in the statutory scheme that the Legislature by § 10 prescribed the time within which the board should commence the operation of the system, imposed upon the board the duty to keep the water works safe, and declared that "the Commonwealth shall exclusively be responsible for all damages caused thereby." Thereafter follow the sections of c. 488 relating to damages.[4] In § 12 of the act the board were empowered to agree with the owners of land upon the damages sustained by the taking, use or interference with their property rights; and were directed to save harmless any city or town against damages for injuries resulting from defects in public ways caused by the construction. In § 13 provision was made for jury trial in the event the parties could not under § 12 agree upon the damages, and execution was to be issued "against the Commonwealth in case the petitioner prevails."[5]

From the foregoing survey of the framework and content of St. 1895, c. 488, it is manifest that § 10, which defined the scope of the operational responsibility of the board and the time when that responsibility should commence, held the transitional position between the sections which provided for the things to be done to prepare for the operation of the

---

[4] Section 11 is not relevant to our discussion. It provides for arrangements for the storage, pumping and sale of water among cities and towns, water companies and the board, and for the sale or lease by the board of property taken and no longer needed for the operation of the waterworks under their control.

[5] It is quite evident that §§ 9 and 12 of St. 1895, c. 488, were the predecessor statutes of G. L. c. 92, § 32. See *McNamara* v. *Commonwealth*, 184 Mass. 304, 305.

water supply system and the sections which prescribed the methods to pay the costs of its establishment. There is no provision in c. 488, in § 10 or elsewhere, for a remedy or a method for the determination of damages in the event of injury or damage caused by the operation or maintenance of the water supply system. There is lacking, therefore, the clear manifestation of intent on the part of the Commonwealth to be subject to liability in this respect. That intent is a prerequisite to a proceeding such as the one before us. *Burroughs* v. *Commonwealth*, 224 Mass. 28, 29. *Glickman* v. *Commonwealth*, 244 Mass. 148, 149. *Putnam Furniture Bldg. Inc.* v. *Commonwealth*, 323 Mass. 179, 185. We construe the provision in St. 1895, c. 488, § 10, carried over to G. L. c. 92, § 15, that "the commonwealth shall be exclusively responsible for all damages caused thereby . . ." as a reservation by the Commonwealth of the right to determine, upon the occurrence of the event, the action to be taken should damage be caused by a defect or want of repair in or by a failure of the M. D. C. to keep safe the waterworks constructed or maintained by it. Such relevant subsequent legislation as there is points to this construction. Resolves 1955, c. 149; 1961, c. 9; 1962, c. 6, c. 32. Indeed, it appears that by St. 1957, c. 689, the Commonwealth has exercised its prerogative to grant redress to those who, like the petitioner, suffered property damage from the bursting of the main in Somerville on July 26, 1957. The terms of St. 1957, c. 689, patently preclude a construction that the Commonwealth thereby consented to be held answerable in its own courts for the damage done.[6] See *Worcester* v. *Commonwealth*, 345 Mass. 99, 101.

---

[6] "Notwithstanding any other provisions of law, including provisions relative to the settlement of claims against the commonwealth, the metropolitan district commission, subject to the approval of the attorney general, is hereby authorized and empowered to reimburse any persons for damage to their property, both real and personal, caused by the bursting, on July twenty-sixth, nineteen hundred and fifty-seven, of a section of the forty-eight inch Spot pond water supply main in Willow avenue in the city of Somerville, and to expend for such purpose such sums as may be appropriated therefor from the funds of the metropolitan district commission . . . ." The respondents assert in their brief that "The petitioner John M. Smith was reimbursed for damage claim to his real estate, personal property and an automobile, and releases relating thereto were given, in 1957." Nothing appears in the record concerning this assertion. We accordingly can give it no weight.

Since there has been pointed out to us no statute wherein the Commonwealth has consented to be sued in tort for injuries sustained in the manner alleged, and since we are aware of none, the motions to dismiss the petitions were properly allowed. The orders of dismissal are affirmed. In each case judgment is to be entered for the respondents.

*So ordered.*

CUTTER, J. (concurring). I concur in the result because it does not appear to me that, either in St. 1895, c. 488, § 10, or in G. L. c. 92, § 15, the Legislature has sufficiently indicated any intention to allow recovery against the Commonwealth in circumstances such as here appear. I see, however, in the statutory language no express legislative reservation of immunity from liability, although such immunity may be the consequence of the failure of the 1895 statute to be more explicit.