NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12323

ALYSSA CORMIER & another[1] vs.  CITY OF LYNN & others.[2]


Essex.     November 9, 2017. - February 27, 2018.

Present:  Gants, C.J., Gaziano, Lowy, & Budd, JJ.


Massachusetts Tort Claims Act.  Governmental Immunity.
    Municipal Corporations, Liability for tort, Governmental
    immunity.  School and School Committee, Liability for tort.
    Negligence, Governmental immunity.



    Civil action commenced in the Superior Court Department on
March 2, 2011.

    A motion to dismiss was heard by Robert N. Tochka, J.

    After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


    Douglas K. Sheff (Sara W. Khan, Frank J. Federico, Jr., &
Donald R. Grady, Jr., also present) for the plaintiffs.
    James P. Lamanna, Assistant City Solicitor (George S.
Markopoulos, Assistant City Solicitor, also present) for city of
Lynn.

_____

    [1] James Mumbauer, individually and as parent and next friend
to Matthew Mumbauer.

    [2] Nancy Doherty, Debra Ruggiero, Linda J. Morgan, Lynn
Public Schools, North Shore Medical Center (NSMC), and Ethel Wu.
One defendant is a minor and will not be named.

Gary Buseck, Patience Crozier, & Joseph N. Schneiderman, for GLBTQ Legal Advocates & Defenders, amicus curiae, submitted a brief.

BUDD, J.  Bullying is a persistent, pernicious problem in our schools -- it can cause emotional and, at times, physical harm.  In this case, Matthew Mumbauer suffered both.  Matthew was a public elementary school student in Lynn when he was pushed down a stairwell at school by a classmate.  Matthew's fall led to a spinal injury, resulting in permanent paralysis.  He and his parents, Alyssa Cormier and James Mumbauer (collectively, plaintiffs), brought claims against a number of defendants in connection with the incident and Matthew's subsequent medical care.  A Superior Court judge allowed a motion to dismiss all claims against the city of Lynn, Lynn Public Schools (school district), and their public employees (collectively, public defendants).[3]  The Appeals Court affirmed that decision in an unpublished memorandum and order issued pursuant to its rule 1:28.  Cormier v. Lynn, 91 Mass. App. Ct. 1101 (2017).

---

[3] A Superior Court judge dismissed the plaintiffs' complaint against the defendants Morgan, Wu, and NSMC after the medical malpractice tribunal found that there was not sufficient evidence to raise a legitimate question as to liability appropriate for judicial inquiry.  A settlement agreement was reached with the classmate who pushed Matthew; all claims against him were dismissed with prejudice.

We allowed the plaintiffs' motion for further appellate review, limited to whether the Massachusetts Tort Claims Act (act), G. L. c. 258, § 10 (j), bars the plaintiffs from bringing claims against the public defendants in relation to this incident.  Thus, the issue that we must decide is not whether the school was negligent for failing to act reasonably to prevent the bullying that led to Matthew's injuries; the complaint alleges that it was, and for purposes of this appeal, we accept that allegation as true.  Rather, the issue on appeal is whether, under the act, the public defendants may be held liable for that negligence.  We conclude that the act protects them from liability for such negligence.[4]

Background.  The facts of this case, drawn from the complaint, are tragic.  On March 10, 2008, then fourth grade student Matthew Mumbauer was pushed down a stairwell by a classmate while attending a public elementary school in Lynn.  The incident occurred while the students were lining up at the beginning of the school day.

By late morning and throughout the afternoon, Matthew complained to teachers and classmates of "tingling and numbness" in his extremities.  His symptoms were not reported to the school nurse or any other medical professionals.  By the end of

---

[4] We acknowledge the amicus letter submitted by GLBTQ Legal Advocates & Defenders.

the school day, Matthew reported feeling like his legs were "dead weight" and he needed assistance to walk out of the school.

In the afternoon, Matthew's parents brought him to North Shore Medical Center (NSMC), where he was diagnosed with a sprain in his right foot and given pain medication. He stayed home from school the following day. On March 12, Matthew returned to NSMC because he was unable to move his hands or legs. Matthew was then transferred to Massachusetts General Hospital in Boston, where he was diagnosed with an injury to his spinal column and spinal cord, which resulted in the onset of quadriplegia. He is permanently paralyzed and confined to a wheelchair.

The plaintiffs' complaint alleges that, prior to being pushed down the stairs in March, 2008, Matthew was subject to constant bullying at school by a small group of students, including the classmate who pushed Matthew. Matthew's mother had reported acts of harassment levied against him on multiple occasions during the 2007-2008 school year to school officials. Matthew had also complained to teachers and administrators at the school numerous times about bullying and harassment. The plaintiffs contend that the school did not enforce its own antibullying policies.

Discussion. "We review the allowance of a motion to dismiss de novo." Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "For the purposes of that review, we accept as true the facts alleged in the plaintiffs' complaint[] and any exhibits attached thereto, drawing all reasonable inferences in the plaintiffs' favor." Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 595 (2017).

1. Sovereign immunity and the act. For over a century, "the Commonwealth c[ould] not be impleaded in its own courts, except by its own consent" at common law. Troy & Greenfield R.R. v. Commonwealth, 127 Mass. 43, 46, 50 (1879).[5] Municipalities were also largely immune from liability in tort.[6] See Bolster v. Lawrence, 225 Mass. 387, 388-390 (1917) (summarizing circumstances in which municipalities were immune

---

[5] After this court's decision in Troy & Greenfield R.R. v. Commonwealth, 127 Mass. 43 (1879), the Legislature passed St. 1887, c. 246, which authorized the Superior Court to hear certain claims against the Commonwealth. This court construed the statute to exclude jurisdiction over tort claims. See R. Zoppo Co. v. Commonwealth, 353 Mass. 401, 404 (1967); Smith v. Commonwealth, 347 Mass. 453, 456 (1964); Murdock Parlor Grate Co. v. Commonwealth, 152 Mass. 28, 30-31 (1890). See also Morash & Sons, Inc. v. Commonwealth, 363 Mass. 612, 614-615 (1973) (discussing waiver of sovereign immunity implicit in St. 1887, c. 246, and its successor statute).

[6] Prior to 1973, a municipality was not liable for tortious acts in the conduct of its schools. See Desmarais v. Wachusett Regional Sch. Dist., 360 Mass. 591, 593-594 (1971); Molinari v. Boston, 333 Mass. 394, 395-396 (1955); Reitano v. Haverhill, 309 Mass. 118, 122 (1941); Warburton v. Quincy, 309 Mass. 111, 117 (1941); Sweeney v. Boston, 309 Mass. 106, 109-110 (1941); Hill v. Boston, 122 Mass. 344, 380 (1877).

from liability in tort at common law); <u>Mower</u> v. <u>Leicester</u>, 9 Mass. 247, 249 (1812) (concluding that common law prohibits tort actions that are not statutorily authorized for "neglect of duties enjoined on them"). Public employees were always immune from liability for negligent omissions, or "nonfeasance." See <u>Desmarais</u> v. <u>Wachusett Regional Sch. Dist</u>., 360 Mass. 591, 593 (1971); <u>Trum</u> v. <u>Paxton</u>, 329 Mass. 434, 438 (1952).

In <u>Morash & Sons, Inc</u>. v. <u>Commonwealth</u>, 363 Mass. 612, 618-619 (1973), and <u>Whitney</u> v. <u>Worcester</u>, 373 Mass. 208, 210 (1977), we determined that the underlying basis for common-law sovereign immunity for both the Commonwealth and municipalities was "logically indefensible," and stated our intention to abrogate the doctrine of municipal immunity after the conclusion of the 1978 legislative session (providing the Legislature with an opportunity to set forth sovereign immunity policy for the Commonwealth and its political subdivisions through legislation). We reasoned that the common-law rules of sovereign immunity were incompatible with the fundamental principle in tort "that if there is tortious injury there is liability." <u>Morash & Sons, Inc</u>., <u>supra</u> at 621. At the same time, we acknowledged that public policy demanded some reasonable limits to governmental liability in order for taxpayers to avoid a potentially catastrophic financial burden. See <u>id</u>. at 623 & n.6.

Shortly before the end of the 1978 legislative session, the Legislature passed G. L. c. 258, the act,[7] which allowed for limited tort liability for the Commonwealth and its political subdivisions. See St. 1978, c. 512. Section 2 of the act provides that public employers are liable for negligent or wrongful acts or omissions of public employees acting within their scope of employment. See G. L. c. 258, § 2.[8]

2. G. L. c. 258, § 10 (j). Although the act statutorily eliminates the immunity that governmental bodies would ordinarily enjoy under common law, it sets forth several exceptions to that general waiver of sovereign immunity. See G. L. c. 258, § 10 (a)-(j).

---

[7] This court and commentators refer to G. L. c. 258 as the Massachusetts Tort Claims Act (act). See, e.g., Brum v. Dartmouth, 428 Mass. 684, 686 (1999); Jean W. v. Commonwealth, 414 Mass. 496, 498 (1993); Dinsky v. Framingham, 386 Mass. 801, 802 (1982); Glannon, The Scope of Public Liability Under the Tort Claims Act: Beyond the Public Duty Rule, 67 Mass. L. Rev. 159, 159 (1982). However, the act's full title is "An Act establishing a claims and indemnity procedure for the commonwealth, its municipalities, counties and districts and the officers and employees thereof." St. 1978, c. 512.

[8] General Laws c. 258, § 2, provides that governmental units "shall be liable for injury or loss of property or personal injury or death . . . in the same manner and to the same extent as a private individual under like circumstances." The language is substantially the same as the Federal government's waiver of sovereign immunity. See 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . .").

Section 10 (j) bars "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."[9]  G. L. c. 258, § 10 (j).

---

[9] The Legislature carved out and permitted plaintiffs to pursue some claims that would otherwise be covered by G. L. c. 258, § 10 (j), by exempting certain claims from § 10 (j)'s exemption from the act's general waiver of sovereign immunity. Pursuant to G. L. c. 258, § 10 (j) (1)-(4), the exemption shall not apply to

"(1) any claim based on explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances.  A permit, certificate or report of findings of an investigation or inspection shall not constitute such assurances of safety or assistance; and

"(2) any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention; and

"(3) any claim based on negligent maintenance of public property; [and]

"(4) any claim by or on behalf of a patient for negligent medical or other therapeutic treatment received by the patient from a public employee."

In other words,[10] § 10 (j), which "was intended to provide some substantial measure of immunity from tort liability" to public employers, eliminates government liability for a public employer's act or failure to act to prevent harm from the wrongful conduct of a third party <u>unless</u> the condition or situation was "<u>originally caused</u>" by the public employer. <u>Brum</u> v. <u>Dartmouth</u>, 428 Mass. 684, 692, 695 (1999).

To have "originally caused" a condition or situation for the purposes of § 10 (j), the public employer must have taken an affirmative action; a failure to act will not suffice.[11] <u>Id</u>. at 695-696. In <u>Brum</u>, a public high school student was stabbed to death in a classroom during the school day by one of three armed individuals, after an earlier violent interaction involving the assailants. <u>Id</u>. at 686. School officials had been informed that the assailants, who had left the school grounds after the altercation, planned to return and retaliate against certain students, including the child who was ultimately killed. <u>Id</u>. at 686-687. The victim's mother brought suit against the municipality for its negligent failure to maintain adequate

---

[10] "To say that § 10 (j) presents an interpretive quagmire would be an understatement." <u>Brum</u>, 428 Mass. at 692.

[11] The question of original causation is separate from the question of liability. Even when a court concludes that a public employer has affirmatively acted so as to create original causation such that it may be sued under the act, a plaintiff still bears the burden of establishing the elements of whatever tort claim he or she brings.

security measures at the school and failure to protect her son despite being made aware of a known threat.  Id. at 687.  We concluded that § 10 (j) precluded the municipality's liability for failure to prevent the killing absent an affirmative act by a public employee in the operation of its schools.  Id. at 696.  See Bonnie W. v. Commonwealth, 419 Mass. 122, 125-126 (1994) (concluding that § 10 [j] barred claim based on negligent failure to supervise parolee but permitted claim based on negligently recommending his employment).

Furthermore, for the "original cause" language under § 10 (j) to apply, "the act must have materially contributed to creating the specific 'condition or situation' that resulted in the harm."  Kent v. Commonwealth, 437 Mass. 312, 319 (2002).  In Kent, we concluded that § 10 (j) required dismissal of a claim against the parole board for its negligence in releasing a convicted murderer who, eight years later, shot a police officer.  Id. at 313, 319-320.  We concluded that the parole board's affirmative act did not materially contribute to the police officer's injuries.  Id. at 319-320.

3.  Application of § 10 (j) to plaintiffs' tort claims. The parties disagree as to whether the stated exception in § 10 (j) applies to the plaintiffs' claims.  The defendants argue that the claims are precluded by § 10 (j) because Matthew's injuries were caused by the "violent or tortious

conduct of a third person."  The plaintiffs acknowledge that a third party directly harmed Matthew, but argue that the school district is not immune from liability because school employees "originally caused" the dangerous situation that resulted in Matthew's injuries.  See G. L. c. 258, § 10 (j).  See also Brum, 428 Mass. at 692.  Thus, we must determine whether the plaintiffs allege that the school district employees took an affirmative act that materially contributed to creating a condition or situation that resulted in Matthew's injuries.  See Kent, 437 Mass. at 319.

There can be little doubt that some actions by the public defendants contributed indirectly to Matthew's injuries, for example, Matthew and his tormentors were required to attend school and were placed in the same class.  These actions, however, "are too remote as a matter of law to be the original cause" of Matthew's injuries under § 10 (j) and therefore cannot be said to have "materially contributed" to creating the specific condition or situation resulting in Matthew's injuries. See Kent, 437 Mass. at 319.

In their complaint, the plaintiffs make numerous allegations that the school district and its employees negligently failed to protect Matthew or negligently failed to

diminish the harm caused by Matthew's injuries.[12]  These claims are barred by § 10 (j) because they originate from a failure to act rather than an affirmative act.  See Brum, 428 Mass. at 696.

In their brief, the plaintiffs highlight that the school's staff had a policy of having students line up in a particular order outside school each morning before the start of the school day without guidance or supervision.  This, they argue, was an affirmative act that resulted in Matthew and his classmate being in close proximity and created the situation that led to Matthew's injuries.[13]  Putting aside the question whether this

---

[12] The plaintiffs' allegations include that the public defendants were negligent for failing to investigate properly the plaintiffs' prior complaints of bullying and harassment of Matthew and failing to implement the mandatory policies of the school committee of Lynn designed to ensure a safe learning environment.  They further allege that the city of Lynn was negligent in hiring, retaining, and supervising teachers and liable for failing properly to instruct, train, and supervise staff regarding the proper methods of implementing school district antibullying policies.

[13] The plaintiffs cite Gennari v. Reading Pub. Sch., 77 Mass. App. Ct. 762 (2010), to support their argument.  There, the Appeals Court held that a principal's decision to hold recess in a concrete courtyard was an "original cause" of the situation leading to a student's injury when a classmate pushed the student and he struck his head on concrete.  Id. at 765. The court reasoned that "[r]unning, falling, and pushing are understood, foreseeable, even inherent parts of . . . recess" and therefore the causal link between the principal's decision and the injury was "not so remote as a matter of law" that her decision was not an "original cause" within the meaning of § 10 (j).  Id.

Gennari, which perhaps represents the outer limits of conduct falling within the scope of what might be considered an

particular fact was adequately pleaded in the plaintiffs'
complaint,[14] this allegation is, at bottom, another claim for
negligence based on an act that fails to prevent or diminish
harm by failing to keep Matthew and his bullies apart.
"[C]onditions that are, in effect, failures to prevent harm,
would undermine [the] principle purpose" of § 10 (j).  Brum, 428
Mass. at 696.  Effectively, the plaintiffs seek to hold the
school liable for not acting in a manner that ensured Matthew's
safety.  Such a claim is precluded under the act.

Conclusion.  There is no question that bullying is a
serious issue.  The tragedy that occurred in this case
highlights the emotional pain of day-to-day harassment suffered

---

"original cause" under § 10 (j), is readily distinguishable from
this case.  In Gennari, the principal affirmatively chose to
hold recess in a concrete area rather than a safer alternative.
In contrast, as discussed infra, regardless of what the line-up
policy was, the claim here amounts to an alleged failure to act
to keep Matthew safe.

[14] The complaint does not allege that Matthew had a
particular assigned spot in line.  It simply states, "[W]hile
lining up at the beginning of the school day, Matthew Mumbauer
was violently shoved by [a classmate]."  However, when Matthew
was deposed he stated that he was "assigned in the back."  See
Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007)
("The only facts appropriate for consideration in deciding a
motion to dismiss are . . . those drawn from factual allegations
contained with the complaint or within attached exhibits").

by those who are bullied, as well as the horrific physical consequences that can result.[15]

In this case it appears, based upon the allegations of the complaint, that those working at the elementary school could have and should have done more to protect Matthew. Nevertheless, the fact remains that the Legislature has imposed restrictions on the act that exempt school districts from liability. See Whitney, 373 Mass. at 210 ("on the subject of sovereign immunity . . . barring any possible constitutional infirmities, the Legislature will have the final word").

The order of the Superior Court judge allowing the motion to dismiss is affirmed.

So ordered.

---

[15] An antibullying statute was enacted in 2010 and amended in 2014. G. L. c. 71, § 37O, inserted by St. 2010, c. 92, § 5, and amended through St. 2014, c. 86, §§ 1-4. Although it was not in effect in the time frame relevant to this case, the schools of the Commonwealth are now statutorily required to address bullying. The antibullying statute prohibits bullying on school grounds and requires school districts to "develop, adhere to and update a plan to address bullying prevention and intervention." G. L. c. 71, § 37O (d) (1). The Department of Elementary and Secondary Education (department) has the power to "investigate certain alleged incidents of bullying," determine whether a school district has "properly implemented its prevention plan," and require the school district to take actions to address any relevant findings that the department makes. G. L. c. 71, § 37O (n). It remains to be seen whether the regulatory mechanisms of the antibullying statute provide sufficient incentives for schools to develop and adhere to adequate measures to protect students from these harms. See G. L. c. 71, § 37O; Brum, 428 Mass. at 709 (Ireland, J., concurring).