NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-775                                              Appeals Court

  SHANNON PARADIS, personal representative,[1]  vs.  MARTHA FROST &
                          another.[2]


                          No. 22-P-775.

      Middlesex.     June 8, 2023. - September 22, 2023.

          Present:  Blake, Walsh, & Hershfang, JJ.


School and School Committee, Regional school district.  Social
     Worker.  Negligence, Licensed independent clinical social
     worker, Duty to prevent harm, Public employee, School,
     Wrongful death.  Wrongful Death.  Massachusetts Tort Claims
     Act.  Practice, Civil, Motion to dismiss.  Immunity from
     Suit.  Words, "Member of household," "Intervention."



     Civil action commenced in the Superior Court Department on
May 3, 2021.

     Motions to dismiss were heard by James H. Budreau, J.


     Jeffrey S. Beeler for the plaintiff.
     John J. Davis for Acton-Boxborough Regional School
District.


_____

          [1] Of the estate of Jacob R. Goyette.

          [2] Acton-Boxborough Regional School District.

WALSH, J.    After the suicide of her son Jacob R. Goyette, Shannon Paradis filed a complaint against Acton-Boxborough Regional School District (school district) and social worker Martha Frost, claiming negligence and wrongful death.[3]  A judge of the Superior Court allowed the school district's motion to dismiss on the ground that the school district was immune from liability under G. L. c. 258, § 10 (j).[4]  On appeal, Paradis argues that the school district is not immune because it owed Jacob a duty to take reasonable steps to prevent his suicide. She also argues that the school district is not immune from liability because Frost, a public employee, took affirmative actions which were the original cause of Jacob's harm.  In the alternative, Paradis argues that even if immunity were to somehow apply to the school district, the circumstances presented here fall within three exceptions to the statute.  We affirm.

---

[3] Counts I, II, and III of the amended complaint allege negligence and wrongful death against Frost.  The sole count against the school district is Count IV under the Massachusetts Tort Claims Act.  The judge denied Frost's motion to dismiss, ruling that the issue of whether Frost was a public employee was not ripe for a decision.  The claims against Frost were pending at the time this case was argued; Frost is not a party to this appeal and the only issue on appeal relates to Count IV against the school district.

[4] The judge ordered the entry of a separate and final judgment for the school district, Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), from which Paradis filed a timely notice of appeal.

Background.  We summarize the background of this case and, because this appeal stems from the allowance of a motion to dismiss, we "accept as true the facts alleged in the plaintiff['s] [amended] complaint as well as any favorable inferences that reasonably can be drawn from them."  Polay v. McMahon, 468 Mass. 379, 382 (2014).

In 2017, Jacob was a sixteen year old student who attended the Acton-Boxborough Regional High School (school), a regional public school.  The school district operates and controls the activities of the school.  During the 2017-2018 school year, Frost, a licensed independent clinical social worker, had a contract with the school district to work at the school as a high school social worker for one year, in addition to maintaining her private practice as a licensed social worker.

During the relevant time period, school district officials knew that Jacob suffered from anxiety, attention deficit hyperactivity disorder, and impulsivity, and that the school was providing him with accommodations through a "504 plan."[5]  Those same officials also knew that five current or former students from the school district had died by suicide in the two years preceding Jacob's death.  In the months prior to Jacob's death,

---

[5] "[A] 504 plan is a plan to accommodate [a child's] disability and enable [him or her] to attend public school" (quotations and citation omitted).  Commonwealth v. Olivier, 89 Mass. App. Ct. 836, 843 n.11 (2016).

a school guidance counselor (a different person from Frost) included in her notes that three of Jacob's grandparents had died in 2017 and that Jacob had been friends with another student from the school district who had died by suicide. As of early 2018, the school district also knew that Jacob had stopped doing his homework and was failing his classes.

On May 30, 2018, Jacob's girlfriend interrupted a meeting between Frost and another student to report concerns she had about Jacob's well-being. She told Frost that earlier that day she had seen Jacob drinking alcohol in the school commons, that he was drunk, upset, and crying, and "that something was really wrong." She told Frost that "she had noticed that things were not right with Jacob" and that Jacob would not tell her what was bothering him. She confided in Frost that his behavior reminded her of another student at the school who had recently died by suicide. She also "told Frost that she thought Jacob was going to do something stupid, including possibly hurting himself." "Frost told the girlfriend not to worry and that [she] would be in contact with Jacob's parents and the [d]ean to ensure that they got Jacob the help that he needed." Due to Frost's assurances, the girlfriend (who was also being counseled by Frost) did not inform Jacob's parents about her concerns, which she otherwise would have done.

Shortly thereafter, Frost met with Jacob. Frost did not keep a record of the meeting. Frost did not speak to Jacob's parents about her meeting with Jacob or about the girlfriend's concerns. Tragically, about six weeks later, during summer school vacation, Jacob died by suicide at his home. Two months thereafter, the school principal contacted Jacob's parents. He informed them of the events of May 2018 between Frost and Jacob's girlfriend, and that Frost was now "separated from her contracted position at" the school.

Discussion. Paradis argues that the school district is not immune from suit because Frost, for whose actions she contends the school district is liable, was the original cause of Jacob's suicide. She further argues that if the school district is immune, her claims fall within three exceptions, as set forth in G. L. c. 258, § 10 (j) (1), (2), and (4). In addition, relying on Nguyen v. Massachusetts Inst. of Tech., 479 Mass. 436 (2018), Paradis argues that the school district is liable for Jacob's death because the school district owed Jacob a duty to take reasonable steps to prevent his suicide. Because we conclude that the school district is immune from suit, we need not -- and do not -- reach the question of duty, although we set out the contours of Paradis's argument for the sake of completeness.

1. Standard of review. "We review the allowance of a motion to dismiss de novo." Curtis v. Herb Chambers I-95, Inc.,

458 Mass. 674, 676 (2011). We accept as true the allegations in the amended complaint and draw every reasonable inference in favor of Paradis. See Polay, 468 Mass. at 382. To survive a motion to dismiss, the factual allegations must support an entitlement to relief. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008). In making this determination, we look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief. See id. at 636.

2. Immunity. Taking the allegations of the amended complaint as true, we must determine whether, under the Massachusetts Tort Claims Act, the school district is immune from suit. This is a question of law that we review de novo. See Klevan v. Newton, 97 Mass. App. Ct. 87, 90 n.8 (2020). Public employers are liable for the negligent acts and omissions of their public employees "in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations. G. L. c. 258, § 2. Section 10 (a)-(j) of G. L. c. 258, however, "sets forth several exceptions to that general waiver of sovereign immunity." Cormier v. Lynn, 479 Mass. 35, 39 (2018). In particular, § 10 (j) provides that government entities are immune from claims "based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation . . . which

is not originally caused by the public employer or any other person acting on behalf of the public employer." See Cormier, supra.

Paradis claims that immunity under § 10 (j) does not apply where a public employer (the school district) is the original cause of the harm. Specifically, she argues "that Frost's affirmative act materially contributed to creating a condition or situation that resulted in Jacob's death."

Our case law is clear that an "original cause" must be an affirmative act; the failure to act does not suffice. See Cormier, 479 Mass. at 40. "[T]he principal purpose of § 10 (j) is to preclude liability [on the part of the Commonwealth] for failures to prevent or diminish harm" (citation omitted). Jacome v. Commonwealth, 56 Mass. App. Ct. 486, 489 (2002). The amended complaint alleges that Frost failed to take appropriate action -- to inform Jacob's parents of Jacob's situation, and to conduct an appropriate risk assessment of Jacob when she met with him and to keep a record of the meeting -- after speaking with Jacob's girlfriend. Paradis does not allege the kind of "affirmative acts" necessary for Frost to be the original cause of Jacob's suicide. For the original cause language of § 10 (j) to apply, "the act must have materially contributed to creating the specific 'condition or situation' that resulted in the harm" (emphasis added). Kent v. Commonwealth, 437 Mass. 312, 319

(2002), quoting G. L. c. 258, § 10 (j). In essence, Paradis claims that Frost was the original cause of Jacob's suicide by affirmatively telling Jacob's girlfriend that she would inform his parents and then failing to do so, thereby depriving his family of an opportunity to intervene and obtain treatment for Jacob.

We conclude, as the judge did, that Jacob's suicide was the result of his own state of mind and not the failures of Frost. See Jones v. Maloney, 74 Mass. App. Ct. 745, 749 (2009) (plaintiff may be original cause of harmful "condition or situation"). See also Jacome, 56 Mass. App. Ct. at 489-490 (defendant's failure to prevent drowning victim from swimming in unsafe conditions not original cause of death). It therefore follows that the school district is immune for any failure to prevent or diminish the "harmful consequences" of Jacob's "condition or situation." See McCarthy v. Waltham, 76 Mass. App. Ct. 554, 561 (2010) (city immune from suit where original cause of decedent's suicide, one hour after being released from protective custody, was his "suicidal frame of mind"). In essence, "the principal purpose of § 10 (j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party." Brum v. Dartmouth, 428 Mass. 684, 696 (1999) (stabbing by third party was original cause of victim's injuries, not negligence of

defendant).  For these reasons, the school district is immune from suit.[6]

3.  Exceptions.  Paradis next argues that even if the school district qualifies for immunity, there are three exceptions that apply.  We address each in turn.

a.  Specific assurances.  General Laws c. 258, § 10 (j) (1), provides in relevant part that immunity does not apply to "any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances."  This section only applies "to the truly exceptional case where direct and explicit assurances are given to a particular person quite apart from the normal carrying out of officials' routine duties."  Barnes v. Metropolitan Hous. Assistance Program, 425 Mass. 79, 87 (1997).  Paradis argues that § 10 (j) (1) applies because Jacob's

---

[6] Even if Frost's statements to the girlfriend were affirmative acts, we agree with the judge that the claim still fails because they must have materially contributed to the "'condition or situation' that resulted in the harm."  Cormier, 479 Mass. at 40.  Paradis has failed to set forth facts to support the required inference that Frost's statements to the girlfriend in May set in motion a chain of events that caused Jacob's state of mind in July.

girlfriend may be "properly viewed as a member of Jacob's household," and Frost made explicit assurances to her. We are not persuaded.

The phrase "member of his household" in this context has not been defined by either statute or case law. Accordingly, we apply well-settled rules of statutory interpretation. "When a statute's language is plain and unambiguous, we afford it 'its ordinary meaning.'" Commonwealth v. Keefner, 461 Mass. 507, 511 (2012), quoting Commonwealth v. Brown, 431 Mass. 772, 775 (2000). "If we determine that the intent of the Legislature is unambiguously conveyed by the statutory language, we simply end our analysis and give effect to the legislative intent." Nunes v. Duffy, 101 Mass. App. Ct. 460, 463 (2022), quoting Adams v. Boston, 461 Mass. 602, 609 (2012).

The term "household" is defined as "[a] group of people who dwell under the same roof."[7] Black's Law Dictionary 888 (11th ed. 2019). None of the facts alleged in the amended complaint, nor any of the inferences that can reasonably be drawn from the facts, lead us to conclude that Jacob's girlfriend was "a member of his household." Accordingly, § 10 (j) (1) does not apply.[8]

---

[7] We decline to interpret, as Paradis argues, the term "member of his [or her] household" as equivalent to the more expansive definition of "family or household members" under G. L. c. 209A, § 1.

b.  Intervention.  General Laws c. 258, § 10 (j) (2), limits immunity when the claim is "based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention."  Although the statute does not define "intervention," we have interpreted the term to mean "the act or fact of intervening."  Stahr v. Lincoln Sudbury Regional High Sch. Dist., 93 Mass. App. Ct. 243, 249 (2018), quoting Webster's Third New International Dictionary 1183 (1993).  In other words, for § 10 (j) (2) to apply, the claim must be based on an intervening act, not a failure to act.  See Stahr, supra.  Paradis argues that Frost's assurances to the girlfriend qualified as an intervention under § 10 (j) (2).  We disagree.

At most, Frost's statements that she would inform Jacob's parents (and her failure to do so) were negligent omissions, and not acts of intervention.  See Jones, 74 Mass. App. Ct. at 749-750 (assistant principal's failure to act cannot be considered act of intervention under § 10 [j] [2]).  Because § 10 (j) (2) eliminates immunity for affirmative acts of intervention, it does not apply here.

---

⁸ Because Jacob's girlfriend was not a "member of his household," we need not and do not address whether Frost's assurances to the girlfriend were explicit and specific, or whether the girlfriend's reliance on Frost's assurances was a sufficiently proximate cause of Jacob's death.  See G. L. c. 258, § 10 (j) (1).

c.  *Negligent treatment*.  Finally, G. L. c. 258, § 10 (j) (4), limits immunity for "any claim by or on behalf of a patient for negligent medical or other therapeutic treatment received by the patient from a public employee."  Paradis argues that § 10 (j) (4) applies because the claims arise out of the negligent therapeutic treatment of Jacob by Frost, a licensed independent clinical social worker.  For purposes of the motion to dismiss, we accept that the limited contact between Frost and Jacob could support the claim that Jacob was a patient of Frost.[9]  However, the amended complaint does not allege that Frost was negligent in providing Jacob with "treatment."  Instead the amended complaint faults Frost -- and, derivatively, the school district -- for failing to inform others of Jacob's girlfriend's concerns.  "We cannot stretch the plain language of the operative phrase of § 10 (j) (4) -- negligent medical treatment -- to encompass nonmedical acts or omissions by public employees."  Slavin v. American Med. Response of Mass., Inc., 99 Mass. App. Ct. 55, 58 (2021).

4.  *Negligence claim*.  Given that the school district is immune from suit, we need not (and do not) reach Paradis's argument that the school district owed a duty to take reasonable

---

[9] It is undisputed that Frost met with Jacob only once.

steps to prevent Jacob's suicide.  However, for the sake of completeness, we set forth here the parameters of her argument.

Paradis contends that "Frost's negligence, carelessness and/or unskillful interactions with and/or failure to provide Jacob with the degree of care of the average qualified practitioner . . . were direct and proximate causes of Jacob's death."  Put another way, Paradis claims that the school district, a public employer, is responsible for Frost's actions.  See Berry v. Commerce Ins. Co., 488 Mass. 633, 637 n.3 (2021) ("Respondeat superior is a type of vicarious liability in which the employer is held liable for the acts of the employee committed within the scope of employment").

"Generally, there is no duty to prevent another from committing suicide.  Under our case law, 'we do not owe others a duty to take action to rescue or protect them from conditions we have not created.'"  Nguyen, 479 Mass. at 448, quoting Cremins v. Clancy, 415 Mass. 289, 296 (1993) (O'Connor, J., concurring).  However, the Supreme Judicial Court has "recognized that special relationships may arise in certain circumstances imposing affirmative duties of reasonable care . . . including the duty to prevent suicide."  Nguyen, supra.  The most common examples of such a situation are in jails or hospitals.  See id. at 448-449.  Cf. Bonafini v. G6 Hospitality Prop., LLC, 101 Mass. App. Ct. 612, 612-613 (2022) (no duty where innkeeper failed to call

police to conduct wellness check on guest who died by suicide in rented room).

In Nguyen, 479 Mass. at 448-449, the Supreme Judicial Court considered whether a special relationship existed between a university and its graduate student. In doing so, the court analyzed the role universities play in students' academic and personal lives, and the fact that universities are "property owners and landlords responsible for their students' physical safety on campus." Id. at 450. The court concluded that because of universities' significant involvement in their students' lives, universities may have a special relationship with their students that includes a duty to take reasonable measures to prevent a student's suicide "[w]here a university has actual knowledge of a student's suicide attempt that occurred while enrolled at the university or recently before matriculation, or of a student's stated plans or intentions to commit suicide." Id. at 453. Because the student "never communicated by words or actions to any MIT employee that he had stated plans or intentions to commit suicide, and any prior suicide attempts occurred well over a year before matriculation," the court concluded that no duty was owed by MIT to the student. Id. at 458.

Paradis argues that the principles of Nguyen should extend to public school districts. Although Paradis's argument has

some force, we need not decide the question here because, for the reasons we have already stated, the school district is immune from suit regardless.

<u>Judgment affirmed</u>.