NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1063

MARQUE'E DORSEY & others[1]

vs.

CITY OF BOSTON & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs appeal from dismissal of their Superior Court complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).  They argue that the judge erred in ruling that the defendant city of Boston was immune pursuant to the Massachusetts Tort Claims Act (MTCA), G. L. c. 258, §§ 10 (b) & (j).  We affirm.

---

[1] Melanie Bland, individually and as the parent and guardian of minor children C.R. and M.C.  We identify the minor children by their initials.

[2] Boston Public Schools, Mary Skipper, and Amilcar Silva. On September 24, 2024, the appeal as to these defendants was dismissed by stipulation of the parties pursuant to Mass. R. A. P. 29 (b), as appearing in 481 Mass. 1660 (2019).  The appeal thus proceeds only as to the defendant city of Boston.

Background.  We draw the facts of this case from the plaintiffs' complaint, accepting as true the allegations in it, as well as inferences favorable to the plaintiffs that reasonably can be drawn from it.  See Paradis v. Frost, 103 Mass. App. Ct. 410, 411 (2023).  On September 12, 2022, a student at the Jeremiah Burke High School (school) in Boston was stabbed by another student.  The school either did not change its security and safety protocols, or did so insufficiently.  The school has metal detectors at its front entrance, but they are not properly used after 8:30 A.M.

 Plaintiff Marque'e Dorsey was a student at the school.  On October 4, 2022, plaintiff Melanie Bland, Dorsey's mother, arranged to pick him up early from school to attend a funeral.  That day, another student (shooter) threatened Dorsey and told him that he could not leave the school.  Dorsey was frightened and did not feel safe; he contacted Bland by video call, told her about the threats, and asked her to remain on the video call while she was driving to the school.  Bland arrived at the school with Dorsey's three year old sister, plaintiff M.C., and signed Dorsey and his brother, plaintiff C.R., out from school.  Bland, Dorsey, and C.R. exited the school and went to Bland's car.

The shooter exited the school with a firearm, which he had possessed in the school without it being detected as a result of the failure of the metal detectors to be properly used. When the plaintiffs were directly outside the school, the shooter opened fire on them, shooting repeatedly and chasing them. The plaintiffs jumped out of the car while it was moving. Dorsey suffered two gunshot wounds to the upper abdomen and was rushed to a hospital, critically ill. He underwent surgery, remained hospitalized for sixteen days, and has since required ongoing treatment. The shooting has taken a large toll on him emotionally. Though Bland, C.R., and M.C. were not directly struck by gunfire, they too experienced trauma and have struggled emotionally since the shooting.

The plaintiffs commenced this action, alleging in their complaint that the defendants negligently subjected the plaintiffs to gun violence on school property, negligently failed to supervise the shooter, and negligently inflicted emotional distress on the plaintiffs. A Superior Court judge allowed the defendants' motion to dismiss, ruling that under the MTCA the defendants were immune from liability because the violent conduct of the shooter was not "originally caused" by the defendants, G. L. c. 258, § 10 (j), and the defendants' choices pertaining to security measures at the school were

3

"discretionary function[s]" involving policy making, G. L. c. 258, § 10 (b). Judgment entered dismissing the complaint. The plaintiffs appeal.

Discussion. "We review the allowance of a motion to dismiss de novo" (citation omitted). Cormier v. Lynn, 479 Mass. 35, 37 (2018). In conducting that review, we accept as true the facts alleged in the plaintiffs' complaint and favorable inferences that reasonably can be drawn from them. See Paradis, 103 Mass. App. Ct. at 413. "What is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

Under the MTCA, public employers are liable for negligence of their employees, G. L. c. 258, § 2, subject to certain exceptions enumerated in § 10. See Theisz v. Massachusetts Bay Transp. Auth., 495 Mass. 507, 512 (2025); Doyle v. Quincy, 104 Mass. App. Ct. 761, 764 (2024). The judge concluded that the exceptions set forth in §§ 10 (b) and 10 (j) apply here. We focus on § 10 (j), as it is dispositive.

Section 10 (j) provides that a public employer is not liable for

"any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or

4

situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

In considering whether a defendant was the "original cause[]" of harm within the meaning of § 10 (j), Massachusetts courts have developed a two-part test. First, the defendant "must have taken an affirmative action; a failure to act will not suffice." Cormier, 479 Mass. at 40. Second, the defendant's act must "materially contribute[] to creating the specific 'condition or situation' that resulted in the harm." Id., quoting Kent v. Commonwealth, 437 Mass. 312, 319 (2002). See also Baptista v. Bristol County Sheriff's Dep't, 100 Mass. App. Ct. 841, 855 (2022).

In Brum v. Dartmouth, 428 Mass. 684, 686-687 (1999), after a violent altercation at a high school, three assailants fled, and a student informed school officials that the assailants planned to return and retaliate against certain students including Jason Robinson. That same day, the assailants returned to the school, visibly armed but unimpeded by school officials, and went to a second-floor classroom, where one of them stabbed Robinson to death. Id. The Supreme Judicial Court held that § 10 (j) rendered school officials immune from "liability for their failure to prevent the killing." Id. at 696. The Brum court stated:

5

> "[T]he principal purpose of § 10 (j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party. And to interpret . . . the subordinate clause referring to 'originally caused' conditions, to include conditions that are, in effect, failures to prevent harm, would undermine that principal purpose."

Id.

In Cormier, fourth-grade student Matthew Mumbauer was subjected to constant bullying by classmates including the assailant. 479 Mass. at 37. Mumbauer reported the bullying to school officials numerous times, as did his mother. Id. While students were lining up at the beginning of a school day, the assailant pushed Mumbauer down a stairwell, causing injuries that rendered Mumbauer permanently paralyzed and confined to a wheelchair. Id. at 36-37. The Supreme Judicial Court held that under § 10 (j) school officials were immune from liability for Mumbauer's injuries. Though some actions by school officials "contributed indirectly" to Mumbauer's injuries, id. at 41 -- including placing Mumbauer and the assailant in the same class and requiring students to line up each morning -- the court held that those allegations were essentially a "claim for negligence based on an act that fails to prevent or diminish harm by failing to keep [Mumbauer] and his bullies apart." Id. at 42. Contrast Shapiro v. Worcester, 464 Mass. 261, 272-273 (2013) (city's action permitting effluent to flow into sewer

6

system materially contributed to damage to plaintiffs' property).

The plaintiffs attempt to distinguish Brum and Cormier by arguing that the allegation in their complaint that the metal detectors "are not properly used" after 8:30 A.M. established that the defendants' conduct was the original cause of the shooting.[3] The plaintiffs maintain that the defendants "took the affirmative act of deciding to place metal detectors at the entrance of the school and then decided to only use them before 8:30 A.M." We are not persuaded. Just as the Brum defendants' failure to keep the assailant who stabbed the student out of the school and the Cormier defendants' failure to protect Mumbauer from the assailant who pushed him down the stairs did not amount to the original causes of those harms, here the defendants' failure to detect the gun possessed by the shooter was not the original cause of the plaintiffs' injuries. "Effectively, the plaintiffs seek to hold the school liable for not acting in a

---

[3] The plaintiffs also rely on cases that predate the addition of § 10 (j) to the MTCA, St. 1993, c. 495, § 5. See Onofrio v. Department of Mental Health, 408 Mass. 605, 611 (1990) (under prior version of MTCA, defendants not immune from liability for negligently placing mentally ill tenant in rooming house who burned it down); Doe v. Blandford, 402 Mass. 831, 836-837 (1988) (defendant school officials not immune from liability for negligently supervising employee who sexually assaulted plaintiff student). Cases that predate the enactment of § 10 (j) are inapposite.

manner that ensured [the plaintiffs'] safety.  Such a claim is precluded under the act."  Cormier, 479 Mass. at 42.[4]

The plaintiffs further argue that dismissal of the complaint was inappropriate because it deprived them of the opportunity to gather information in discovery that might establish facts such as how the shooter got the gun into the school and why the metal detector was not working.  The argument

---

[4] In their reply brief, the plaintiffs argue that a statement made by a school official after a stabbing that occurred at the same school a few weeks prior to the assault on Dorsey should preclude immunity for the defendants under § 10 (j).  They point to media coverage of a statement by a school official that "[t]he safety and security of our students and staff are the top priority for Boston Public Schools. Violence has no place in our school communities."  But the plaintiffs' complaint did not include that statement.  Nor did the complaint allege either that the statement amounted to "explicit and specific assurances of safety or assistance" directed to the plaintiffs, or that the plaintiffs' injuries "resulted in part from reliance on those assurances," G. L. c. 258, § 10 (j) (1).  The claim, raised by the plaintiffs for the first time in their reply brief, "is not properly before us."  Theisz v. Massachusetts Bay Transp. Auth., 103 Mass. App. Ct. 822, 827 n.4 (2024), S.C., 495 Mass. 507 (2025).  Even if it were, we read the statement as a "general representation[] that investigation or assistance will be or has been undertaken" of the prior stabbing, rather than an "explicit and specific assurance[] of safety" directed to the plaintiffs within the meaning of § 10 (j) (1).  See Paradis, 103 Mass. App. Ct. at 412, 415 (school guidance counselor's promise to student's girlfriend that counselor would inform student's parents of his distress not cause of student's suicide two months later). Contrast Lawrence v. Cambridge, 422 Mass. 406, 409-410 (1996) (because plaintiff testified in grand jury, police specifically promised to protect him by guarding plaintiff's workplace at closing time).

is unavailing, because the complaint was required to allege facts "'plausibly suggesting (not merely consistent with)' an entitlement to relief" (citation omitted).  Iannacchino, 451 Mass. at 636.  Further, "[i]n light of the desirability of resolving immunity issues quickly, it is preferable to dispose of the question before discovery, as on a motion to dismiss." Brum, 428 Mass. at 688.

Because the defendants were immune from liability pursuant to G. L. c. 258, § 10 (j), we affirm the judgment dismissing the complaint.[5]

Judgment affirmed.

By the Court (Hand, Grant & Wood, JJ.[6]),

Clerk

Entered:  May 23, 2025.

---

[5] Deciding as we do, we need not reach the defendants' alternative argument that they were immune under § 10 (b).  See Doe v. Massachusetts Trial Court, 494 Mass. 408, 415 (2024); Wheeler v. Boston Hous. Auth., 34 Mass. App. Ct. 36, 40 (1993).

[6] The panelists are listed in order of seniority.

9